SHERMAN KINGSBURY, Appellant, v. THE BRADSTREET
COMPANY, Respondent.

In an action against a mercantile agency for libel, it appeared that defend_
ant published and sent to its subscribers a circular wherein was plaintiff's
name, he being engaged in business as a grocer, and opposite the name two
stars. Defendant's superintendent, called as witness for plaintiff, testified
that the two stars meant nothing more than that the reader should look
to the margin of the sheet for explanation. At the bottom of the page
there were two stars, and these words: "For explanation please call at our
office." *Held*, that a verdict for defendant was properly directed; that
the words and character of the circular, standing by themselves, were
incapable of a defamatory meaning; and that, in the absence of aver-
ments and proof of facts showing that they had a latent meaning of
that character, there was no question of fact for the jury.

Reported below, 35 Hun, 212.

(Argued June 24, 1889; decided October 8, 1889.)

APPEAL from a judgment of the General Term of the
Supreme Court in the fifth judicial department, entered upon
an order made the first Tuesday of January, 1885, which
denied a motion for a new trial and directed judgment for the
defendant upon a verdict rendered under direction of the
court.

The plaintiff alleged in his complaint that he was a com-
mission and grocery merchant, doing a large business and
enjoying good credit as a business man, when the defendant,
a corporation, engaged in conducting a mercantile agency,
maliciously published, printed and circulated among its
customers a circular containing the following false and
defamatory matter, referring to the plaintiff: "Canandaigua,
Kingsbury, Sherman, Gro.**;" that the defendant thereby
meant that its customers should understand that he "in some
way or manner had become financially embarrassed in his
business, and that his credit and good name as a merchant had
become affected or impaired, and especially  *  *  *  that
he had failed in business, or had made a general assignment
for the benefit of his creditors;" that his business depended
on his good reputation and credit; that he had not failed nor

made an assignment, and that by means of the premises he was injured in his reputation, good name and credit.

The defendant in its answer admitted its corporate character, the nature of its business, and that it did publish, print and send to its subscribers in certain counties, but to no one else, a circular known as its " Sheet of Changes and Corrections," wherein, referring to the plaintiff, occurred the alleged libelous matter set forth in the complaint, but it denied that such publication was falsely or maliciously made, or that it thereby intended to do any injury to the plaintiff.

The answer also contained a general denial of allegations not admitted, and alleged that said publication was sent in confidence to subscribers only, pursuant to written contracts with them requiring the defendant to seek for and furnish any report of change in the financial standing or otherwise of merchants ; that at the bottom of said circular was an explana- tion of what the characters in question meant, in these words : " ** For explanation please call at our office ; " that all the meaning that it intended to convey to its subscribers, or that they understood it to convey, was, that it had certain confidential information concerning the plaintiff, which it would, confidentially and by word of mouth, convey to such of them as were directly interested in him, providing they would call at its office and make personal inquiry therefor.

The publication in question, as read in evidence upon the trial, was headed : " Improved Mercantile Agency. The Bradstreet Company, Proprietors. Sheet of Changes and Corrections. Rochester, November 12, 1881. This informa- tion is furnished you in confidence, for your exclusive use and benefit, and subject to the conditions of your subscription to our agency." Then followed various lists of names of per- sons, with their residences and business appended, classified by states, and opposite each name were certain figures or characters. Those under the head of " New York " were as follows :

| | | | | |
|---|---|---|---|---|
| " Middleport ....... | James, Ed .......... | Gro........ | 83 | $166 46 |
| Morton's Corners.. | Schroedor, H. N...... | G. S........ | | 44 00 |
| Lockport ......... | Lambert, Jno......... | Flour, etc .. | | ** |
| Buffalo........... | Beach, E. W. & L.... | Printer..... | 83 | 142 00 |
| "        .......... | Taylor, Rich'd........ | Hotel ...... | | 60 00 |
| Canandaigua ..... | Kingsbury, Sherman.. | Gro........ | | ** |
| "          ...... | Skidmore, Thomas.... | B. & S..... | | ** " |

At the bottom of the page upon which the foregoing appeared was the following: "** For explanation please call at our office."

The superintendent of the defendant was called as a witness for the plaintiff and testified that the two stars, as used in said circular, simply meant that the reader should refer to the margin of the sheet for explanation; that it meant nothing more than this, and that it did not mean anything good or bad with reference to the plaintiff's financial reputation. It appeared that about three hundred copies of the circular were issued and that they were sent to all subscribers in the district, whether they were interested in the financial condition of the plaintiff or not.

At the close of the evidence, no testimony having been offered by the defendant, the counsel for the plaintiff asked the court to submit the following questions to the jury: "1. Whether or not the publication of the circular of November 12 would not be understood unfavorably to the plaintiff, *per se*, among persons not interested in the plaintiff and not called for by the customers of the defendant. 2. Whether the plaintiff had not sustained damages under the evidence." The court refused said application and directed a verdict for the defendant.

*Henry M. Field* for appellant. The name and business of appellant being peculiarly his own private property, the respondent had no right to voluntarily print and circulate any publication of or concerning his name or business. (*Pollard* v. *Lyon*, 91 U. S. 225; *Sanderson* v. *Caldwell*, 45 N. Y. 398; Olgers' Laws of Libel and Slander, 78; Townsend on Slander, §§ 146, 148, 188; Greenleaf on Evidence, §§ 254, 256, 420;

*Whittaker* v. *Bradley*, 16 E. C. L. 310.) The circular or "daily sheet" in question was a direct attack upon the name and business of the plaintiff and appellant, and hence was a libel *per se*. A libel *per se* is always presumed to be libelous and some damages implied. (*Bryam* v. *Collins*, 111 N. Y. 143, 150.) A libel can be made of signs or symbols, or even by interrogation points, and thus injure a man in his good name and reputation. (Flood's Law of Libel and Slander, 51 122; Holt on Libel, 244; *Watchler* v. *Quenger*, 29 N. Y. 547.) This circular was not a privileged communication, and plaintiff was entitled to recover, in this action, for all damages he sustained by the unlawful publication thereof. (*Taylor* v. *Church*, 8 N. Y. 452; *Sunderlin* v. *Bradstreet*, 46 id. 188; *Klinch* v. *Colby*, id. 427, 433; *Lewis* v. *Chapman*, 16 id. 369; *King* v. *Patterson*, 49 N. J. 417; *Bradstreet Co.* v. *Gill*, Alb. L. Jour. March 16, 1889; Cooley on Torts, 217; *Williams* v. *Smith*, 22 Q. B. Div. 134; Townsend on Libel, § 282; *Flowes* v. *Bowen*, 30 N. Y. 20; *Benjamin* v. *Jones*, 94 id. 51; *Lathrop* v. *Hyde*, 25 Wend. 148; *Hunt* v. *Bennett*, 19 id. 73; *Salomon* v. *Lawson*, 8 Q. B. 823; *Bryam* v. *Collins*, 111 N. Y. 144.) The plaintiff and appellant had a right to show that the " ** " had a meaning which would injuriously affect his name and business. (*Watchler* v. *Quenger*, 29 N. Y. 547; *Sanderson* v. *Caldwell*, 45 id. 398; 2 Greenl. on Ev. § 417; *Salomon* v. *Lawson*, 8 Q. B. Div. 823; *Hemmings* v. *Gassan*, El., Bl. & El. 446.)

*John H. Bird* for respondent. Courts now take judicial notice of the nature of the business and office of mercantile agencies. (*E. C. and B. Co.* v. *Avery*, 83 N. Y. 31.) The matter complained of being unambiguous, it was the exclusive province of the court to determine its construction and to say whether or not, upon its face, it was actionable *per se*. (*Matthews* v. *Beach*, 5 Sandf. 256; *Green* v. *Telfair*, 20 Barb. 11; *Fry* v. *Bennett*, 5 Sandf. 54; *McCurly* v. *Rob*, 20 Johns. 351; *Kerr* v. *Force*, 3 Cranch, 8.) The defendant had a legal right to impart, without malice, to an interested, inquiring

creditor or party any information it might have touching the plaintiff. (*Ormsby* v. *Douglass*, 37 N. Y. 477; *Sunderlin* v. *Bradstreet*, 46 id. 188.)

VANN, J. The circular in question, on its face, is not a libel upon the plaintiff. It cannot be presumed from the nature of the words used, and it has not been proved as a consequence directly resulting from their use, that the reputation of the plaintiff has been injured either as a man or as a merchant. When construed according to their natural meaning they are innocent and harmless; and, as thus construed, they were not shown to be false. The use of characters in the body of the page to direct the attention of the reader to the margin or bottom thereof is common in many publications, and of itself can excite neither suspicion nor surprise. The plaintiff proved that such was the sole intention of the defendant in making use of the double stars in the publication complained of. The only *innuendo* alleged by the plaintiff states simply what the defendant meant, not what its subscribers or the public understood. There is no apparent ambiguity as to the meaning or application of the words. Without proof of extrinsic facts, the language of the publication, including the characters used, is capable of an innocent construction only. Standing by themselves they are incapable of a defamatory meaning. If there was a latent injurious. meaning arising from facts known both to the defendant and its subscribers, which would reasonably lead the latter to understand the words in a secondary and defamatory sense, it was neither alleged nor proved. Words not libelous *per se* may become so from the connection in which they are used, or the circumstances under which they are published. The situation and surroundings of the most innocent expression may make it libelous, but they must be distinctly alleged and proved. The mere position in a newspaper of an advertisement apparently inoffensive, but surrounded by suggestive items, may make it a question for the jury whether it is libelous or not. (*Zier* v. *Hofflin*, 33 Minn. 66.)

Words are to be construed in the light of their surroundings, and, although harmless upon their face, if found in bad company, may, from that circumstance, be determined to have an injurious meaning. It becomes a question for the jury if there is any evidence of such extrinsic facts to be submitted to them. ( *Williams* v. *Smith,* L. R. [22 Q. B. Div.] 134; Olgers' Libel and Slander, 113.)

The notification sheet in question contained many names, each with figures or characters printed opposite. If it had appeared that those figures and characters were parts of a cypher, understood or capable of being understood by the subscribers through a key furnished by the defendant, and that in each case, or even in many cases, they indicated that the person against whose name they stood had failed in business, or was preparing to fail, or was financially embarrassed, a case would have been presented for our determination quite different in its legal aspects from the one now under consideration. (*Erber* v. *Dun,* 12 Fed. Rep. 526, 532; *Woodling* v. *Knickerbocker,* 31 Minn. 268; *Shepheard* v. *Whitaker,* L. R., 10 C. P. 502; *Capital and Counties Bank* v. *Henty* L. R. [5 C. P. D.] 514; *Ruel* v. *Tatnell,* 29 W. R. 172.)

This appeal must be decided upon what was alleged and proved by the plaintiff, and not upon what might have been alleged and proved. On the record as presented, we think that it was the duty of the learned justice who presided at the Circuit to direct a verdict for the defendant. We have examined the exceptions relating to evidence, but in the light of the suggestions already made, it is obvious that none of them were well taken.

The judgment should be affirmed, with costs.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.