## TURTON v. NEW YORK RECORDER CO.

(Common Pleas of New York City and County, General Term. April 10, 1893.)

1. LIBEL—PLEADING—INNUENDO.
   The publication set out in the complaint as libelous read as follows: "Has $8,500 of the bank's money. Savannah, Ga., Sept. 16. John Turton [plaintiff] * * * has left the city with $8,500 of the S. Bank's' money. Turton drew on his N. Y. firm on Monday through the S. Bank, and the draft was not honored. Yesterday the N. Y. house failed. Mr. Turton left Savannah on Sunday night, and, it is supposed, went to N. Y." *Held*, that no innuendo was necessary, as the actionable meaning of the publication was evident.

2. SAME—OPINION EVIDENCE.
   A question asked the president of the S. Bank, how much, if anything, stated in the article was true or false to his knowledge, was not objectionable, as calling for a conclusion of the witness.

3. SAME—INSTRUCTIONS—DEFINING LIBEL.
   Under Pen. Code, § 242, defining libel as matter "which exposes" a person to hatred, etc., or which "tends to cause" a person to be shunned, or which "has a tendency" to injure any person, an instruction that matter is libelous which "tends to expose" one to public hatred, etc., is sufficient, though it is not within the letter of the statute.

4. SAME—RECKLESS PUBLICATION.
   An instruction that the article "was published wantonly, recklessly, and with an utter disregard to whether it was true or false," was proper where it appeared that the matter was received by defendant's telegraph editor only one hour before it had to be ready for publication,' that he inquired if plaintiff's firm was in trouble, found that it was, and without other inquiries, published the matter as "an interesting feature of the failure."

5. SAME—DEFENSES—OFFER TO RETRACT.
   An offer to retract is not available in mitigation of damages for libel unless made before the action is commenced.

6. SAME—EXCESSIVE DAMAGES.

In such a case, there having been no refusal to publish a retraction demanded, and no offense beyond the original publication, a verdict for $5,000 damages is excessive.

Appeal from trial term.

Action by John Turton against the New York Recorder Company. From a judgment in favor of the plaintiff, entered on the verdict of a jury on June 17, 1892, for $5,000 damages, defendant appeals. Reversed unless plaintiff remit damages.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Rochfort & Stayton, for appellant.

Lawrence E. Embree, for respondent.

DALY, C. J. The action was brought to recover damages for the publication on September 17, 1891, of the following article in the New York Recorder, a newspaper published in the city of New York:

"Has $8,500 of the Bank's Money."

"Savannah, Ga., Sept. 16. John Turton, a well-known naval stores operator, has left the city with $8,500 of the Southern Bank's money. Turton drew on his New York firm on Monday through the Southern Bank, and the draft was not honored. Yesterday the New York house failed. Mr. Turton left Savannah on Sunday night, and it is supposed went to New York. He has been here for several years."

The defense set up was that the general commercial and personal reputation of the plaintiff was such that he was not injured by the publication; publication in the ordinary course of business and without malice; and, by amendment on the trial, justification. The facts of the case, as disclosed upon the trial, were these: The plaintiff was a member of the firm of John Turton's Sons, doing business in the city of New York, and represented his firm in the city of Savannah. He had no personal transactions with the bank mentioned in the publication, drew no draft on his firm through the bank, and had never received any of its money. T. T. Chappeau, a broker in the city of Savannah, employed for several years by the plaintiff's firm to buy resin for them, was in the habit of drawing on the firm when he shipped the resin to them. Such drafts were usually made through the Southern Bank. Between the 4th and 14th of September, 1891, these drafts were 10 in number, and aggregated $8,285.86. Seven of them were accepted by John Turton's Sons, amounting to $7,270.37, and were unpaid on the 14th of September, 1891. In the afternoon of that day the plaintiff, in Savannah, was apprised by telegram that his firm was in difficulty, and he left for New York the same night. The facts proved showed no justification for the publication, and the jury properly found a verdict in favor of the plaintiff. The defendant claims a new trial, however, on the ground of errors in the rulings of the court, and in the instructions to the jury, and also upon the ground that the damages awarded ($5,000) were excessive.

The first contention of the defendant is that the complaint was defective, and that the motion to dismiss for failure to state facts

sufficient to constitute a cause of action should have been granted. The alleged defect in the complaint is the absence of innuendo, or allegations pointing out the actionable meaning of the publication. This contention supposes that the publication will bear an innocent construction, but the mere perusal of it disposes of the point. The charge that the plaintiff "has $8,500 of the bank's money" imputes either fraud or felony. Money rightfully obtained in the usual course of business from a bank upon a draft becomes the property of the person receiving it, and he is simply a debtor for the amount. The money does not remain the money of the bank unless there was some fraud or felony in the transaction which prevents the transfer of title; and the allegation that the plaintiff had drawn on his New York firm through the bank, that the draft was not honored, and that he had left the city with $8,500 of the bank's money, was a charge of fraud or crime, and nothing else. The motion for the dismissal of the complaint was therefore properly denied.

The foregoing reasons dispose also of the defendant's claim that the jury should have been permitted to pass upon the meaning of the published articles. As it was susceptible of but one interpretation, there was no question to be submitted to them. The witnesses for the plaintiff were asked what their impressions were upon reading the article, but this did not authorize the submission of a question which could be answered but one way. The defendant did not except to the allowance of such testimony, and no error can be alleged with respect to it. As the witnesses stated only what the law implied, the defendant was not harmed.

Error is claimed in one instance in the admission of evidence. The vice president of the Southern Bank was called as a witness by the plaintiff, and, after he had stated the facts concerning the drafts upon the bank, the published article was shown him, and he was asked how much, if anything, stated in the article was true or false to his knowledge. This was objected to, as calling for a conclusion. The question was plainly designed to elicit a statement of fact, and not an opinion or conclusion, and was not more objectionable than if each allegation of the libel had been separately read to the witness, and he were asked if it were true. The same inquiry might be put with respect to the allegations collectively when addressed to a witness conversant with all the facts, and best qualified to testify to them. There is no ground for the inference that the question was intended to elicit anything but facts.

The charge to the jury is the subject of many exceptions. It is claimed that the court improperly refused to give the jury the statutory definition of "libel" when requested by the defendant, after having, in the course of the general charge, incorrectly defined what, in law, constituted libel. There being no question of fact for the jury as to whether the publication was libelous or not, it was not necessary to instruct them as to what constituted libel. It is claimed, however, that the court undertook to define "libel" to the jury, and should have done so correctly. Without acceding to this proposition, let us see what the alleged error was. The

Penal Code (section 242) defines libel to be "a malicious publication by writing, printing, picture, effigy, sign, or otherwise than by mere speech, which exposes any living person, or the memory of any person deceased, to hatred, contempt, ridicule, or obloquy, or which causes or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation, or association of persons in his or their business or occupation." The court stated to the jury:

"Matter is libelous which tends to expose a man to public hatred, contempt, or ridicule. Any writing published which impeaches a man of a crime, or, less than that, which exposes him to hatred, contempt, or ridicule, is libelous per se."

The injury complained of is the interpolation by the court of the words "tends to" expose, etc. The statute declares matter libelous which tends to cause a person to be shunned, and defendant claims it is not libelous if it tends to expose him to hatred. This fine distinction may be plausibly argued upon the letter of the statute, but it has no force in reason. But, even if the charge were incorrect in that respect, it was a mere inadvertence, for the judge immediately afterwards charges in the exact words of the statute, and his attention was not called to the part complained of. An exception to a passage in the general charge involving a verbal inaccuracy in the quotation of a statute or of evidence, when the error could have been immediately rectified if pointed out, is unavailing if such exception does not bring the error to the attention of the court.

The court was amply justified in charging the jury that there was not a scintilla of evidence to show that the meaning of the paper was not libelous, and was not so understood, and that there was not a scintilla of evidence intimating or authorizing the jury to find that the charges were true, and in charging that the publication was a libel upon the plaintiff, and in directing the jury to find a verdict for the plaintiff in some amount. No witness could be found to express the opinion that the article in question imputed no wrong to the plaintiff, or could be construed as an account of a mere commercial transaction, with the exception of the defendant's telegraph editor, who swore that his impression was that the dispatch stated that this agent or member of the firm had drawn on the New York firm for a certain amount, and that, while this draft was in the course of collection, the firm failed, and left the man in Savannah indebted to the bank, and he could not settle with it, and had come to New York to fix the matter up. This editor had to pass upon the question as to whether or not the dispatch was to go into the paper, and he published it with the heading, "Has $8,500 of the Bank's Money." His evidence failed to explain why he did so, or to negative the presumption from this fact that he derived impressions unfavorable to plaintiff's honesty from the reading of the dispatch. But his impressions were of no moment, as the article itself was capable of but one interpretation. The question of libel was therefore one of law, and for the court to decide, (Moore v. Francis, 121 N. Y. 199, 23 N. E. Rep. 1127; Kingsbury v. Bradstreet Co., 116 N. Y. 211, 22 N. E. Rep. 365,) and,

the libel being established, and no justification proved, the plaintiff was entitled to a verdict.

On the question of damages, it is claimed that the court erred in charging the jury that this was a case for exemplary damages. There was no error in this respect. The court did no more than instruct the jury that the case was one in which they might give exemplary damages, which was entirely correct, (Bergmann v. Jones, 94 N. Y. 51,) but left it to the jury to say whether they would give such damages or not. The charge of the court was:

"If the case warrants it, and you think he is entitled to exemplary damages, the law allows you to give him such damages as, in your good judgment and in your conscience, you believe ought to be found against the defendant by way of example and punishment; and here, gentlemen, I charge you that the case is such. I charge you that upon the evidence the case authorizes you to find exemplary damages against this defendant,—damages beyond the injuries sustained by the plaintiff; and I so charge you because it is in evidence, uncontradicted, that no effort whatever was made to verify the truth of this report; and that it was published wantonly, recklessly, with an utter disregard to whether it was true or false."

This merely stated to the jury that they were authorized to find exemplary damages, but did not direct them or require them to do so.

Exeception was taken to the latter part of the judge's charge last above quoted,—that no effort was made to verify the truth of the report, and that it was published wantonly and recklessly, with an utter disregard to whether it was true or false. The testimony of the defendant's telegraph editor was that the dispatch reached his desk about midnight, and had to be ready for publication in one hour; that he inquired of the city department if such firm was in trouble in New York, and found that it was, and, without other inquiries, published the dispatch as "an interesting feature of the failure." Here was no effort to discover whether the plaintiff had left Savannah with $8,500 of the Southern Bank's money, or with any other sum, or any facts concerning the matters stated in the dispatch, except the fact that the New York house had failed. The defendant therefore published the injudicious dispatch with an utter disregard as to whether it was true or false, and no better illustration of wanton or reckless circulation of a damaging report could be devised.

After the commencement of the action, the defendant made an offer to publish a retraction if plaintiff would write it. It is claimed that the court should have submitted this offer to the jury in mitigation of damages. The offer of retraction should have been made before the commencement of the action in order to be available as a defense. Town. Sland. & L. 680; Samuels v. Association, 6 Hun, 5.

It is also claimed that the court should have charged, at defendant's request, that if the jury should find that the article was received by the agents or employes of the defendant in the usual course of its business, and published as an ordinary news matter, that fact may be taken into consideration as tending to show that the defendant had no actual malice. The plaintiff claimed no actual malice beyond what the law implied from the false and

injurious nature of the charge, and from the publication of it without inquiry with regard to its truth or falsity. There would be no sense in charging the jury that the circumstances under which the article was published showed it to be wanton and reckless, and showed an indifference as to whether it was true or false, and then in charging that the jury might take the same circumstances into consideration as tending to show want of actual malice.

The motion for a new trial, upon the ground that the damages were excessive, raises another question, and one of exceeding delicacy. Judging by our experience of the very conservative views which juries ordinarily hold on the subject of damages in actions for libel, the verdict in this case appears to be out of the ordinary. It is true that a business man of repute is made the subject of a gross accusation affecting his honesty, which is published broadcast, and without any attempt at prior verification, and that this charge comes upon him at the time of his failure, and adds to the suffering caused by legitimate business misfortune. But the publication is to be distinguished from those personal attacks, followed up by still more injurious repetitions of the original libel, which the records of the courts so often display, or a case where, in the language of Chief Justice Nelson, (Hotchkiss v. Oliphant, 2 Hill, 510,) there is, under pretense of the withdrawal of the charge, "hesitation, lurking insinuation, and attempted perversion of the plain import of the language used in the libelous article, or the substitution of one calumny for another." In the present case there was no refusal to publish a retraction demanded, nor any offense beyond that of the original publication. Under the circumstances as they appear, a much smaller verdict would have sufficed to repair the injury sustained by the plaintiff, have amply vindicated him before the community, and have served as a striking example, as well as a severe punishment; and we feel that we should be doing substantial justice to all parties by reducing the verdict to the sum of $3,000. If the plaintiff stipulates to this reduction, the judgment as so reduced will be affirmed, without costs; otherwise, a new trial will be ordered, on the ground that the damages are excessive, and the costs will abide the event. All concur.