(32 Misc. Rep. 37.)

## WESTBROOK v. NEW YORK SUN ASS'N.

### (Supreme Court, Trial Term, Orange County.   June, 1900.)

1. LIBEL—DUTY OF OFFICER TO MAKE ARREST—KNOWLEDGE OF OFFENSE.

A newspaper article recited the arrest, on a warrant, of one who was charged with embezzling a large sum of money, and stated that he had, prior to his capture, and on the occasion of his leaving the place where the defalcation was committed, made no secret of his intention to leave, and that the last man to say good-by to him at the depot was the chief of police (plaintiff), who remarked to the defaulter that he seemed in a great hurry to leave, and, in a joking manner, asked why he did not wait until the warrant came, and save the trouble of following him up. *Held,* that since there was nothing in the publication charging that plaintiff knew that a felony had been committed, or that he had reasonable ground for believing that defendant had committed a felony, the article does not charge plaintiff with a breach of his official duty, in failing to arrest such person, and is not libelous, as he had no power to arrest without a warrant.

2. SAME—PLEADING—PARTICULAR MEANING.

Where, in an action for libel, plaintiff alleges that defendant, by a certain publication, meant to charge him with a certain offense, the plaintiff cannot thereafter claim that the publication charges him with another and different offense, even though more reasonable than the former, since by charging a particular meaning he excluded all other meanings.

3. SAME—AIDING ESCAPE OF PRISONER.

Pen. Côde, § 87, provides that a person who, with intent to effect or facilitate the escape of a prisoner, whether the escape is effected or attempted or not, enters a prison, or conveys to a prisoner any information, or sends into a prison any disguise, instrument, weapon, or other thing, is guilty of a felony, if the person whose release is sought is held upon a charge or commitment for a felony. A newspaper article recited the arrest on a warrant of one who was charged with embezzling a large sum of money, and stated that he had, prior to his capture, and on the occasion of his leaving the place where the defalcation was committed, made no secret of his intention to leave, and that the last man to say good-by to him at the depot was the chief of police (plaintiff), who remarked to the defaulter that he seemed in a great hurry to leave, and, in a joking manner, asked why he did not wait until the warrant came, and save the trouble of following him up. *Held* not libelous, as charging plaintiff with assisting a criminal to escape.

Action by Townsend Westbrook against the New York Sun Association to recover for an alleged libel. Defendant interposed a demurrer to the complaint. Demurrer sustained.

Trial of the issue of law raised by a demurrer to the complaint as not stating facts sufficient to constitute a cause of action. The action is for damages for an alleged libel which is as follows:

"Lewis E. Goldsmith assistant cashier of the Port Jervis National Bank, who is accused of having stole $54,000.00, of the bank funds surrendered to United States Marshal Henkel at noon to-day having eluded a number of deputy marshals who have been on his track for over two weeks under direction of United States Marshal Henkel.

"United States Bank Examiner Bryan of Brooklyn made an examination of the Port Jervis bank books on November 14th and found that Goldsmith was $54.000.00 short, he swore out a warrant December 12th but when United States Marshal Henkel went to Port Jervis to serve it he found that Goldsmith had left the place four days before very suddenly and without having left any intimations as to where he was going. Goldsmith made no secret of his intent to depart and the last man to say good-bye to him at the railroad station was the chief of police of Port Jervis who remarked to him that he

seemed in a great hurry to leave and in a joking manner asked why he did not wait until the warrant came and save the trouble of following him up. Goldsmith replied that he had urgent business in another part of the country, which required his immediate presence. The United States deputy marshal kept closely on Goldsmith's heels but could not close on him for he left one place after another just before they got there. It is· said Goldsmith visited places in Delaware and New Jersey in addition to this state."

Wilton Bennet, for plaintiff.
Franklin Bartlett, for defendant.

GAYNOR, J. Assuming that the plaintiff was chief of police at the time (which is not alleged, however), there is nothing in the publication implying that he neglected or violated his official duty in not arresting Goldsmith without a warrant. To say nothing of duty, he did not even have the right to arrest Goldsmith without a warrant for a crime of the grade of felony unless he saw him commit the felony, or, if he did not see it, unless a felony had as matter of fact been committed, and he had reasonable cause for believing that Goldsmith had committed it. Code Cr. Proc. § 177. There is nothing in the publication implying that he had reasonable cause for such a belief. And in the case of crimes of the grade of misdemeanors, a policeman or peace officer may arrest without a warrant only when he actually sees the person commit the offense. He cannot do so on his own suspicions, nor on information communicated to him by others. His right to arrest for either a felony or a misdemeanor without a warrant is the same as that of any citizen, no more and no less (Code Cr. Proc. §§ 177, 183); except that in a case of felony, if the felony has actually been committed by some one, the law shields him from an action for false imprisonment for arresting without a warrant providing he had reasonable cause to believe the person arrested to be the one who committed the felony. One not an officer makes such an arrest for felony at his peril if he arrests the wrong person, but an officer is shielded if he have reasonable cause to believe such person to be the felon. This is the only difference in respect of the right of a policeman or peace officer, and of a private citizen, to make an arrest for a felony without a warrant, and in respect of misdemeanors there is no difference. A policeman or peace officer has no more right to arrest a citizen except as prescribed by law than a citizen has to arrest him. The claim that this publication is libelous in that it implies that the plaintiff as a public officer neglected his duty grows out of the pernicious notion which originated in the city of New York and seems to have spread over the state, that the police may arrest at pleasure without a warrant; whereas the citizen has the right to forcibly resist unlawful arrests.

The complaint alleges as the libelous meaning of the publication that it charges the plaintiff with violating section 87 of the Code of Criminal Procedure (meaning the Penal Code, no doubt) by assisting a criminal to escape. Having alleged that as the libelous meaning, he must stand upon it alone. He cannot now bring up some other meaning. By alleging a particular meaning he has excluded all other meanings. The defendant cannot be required to plead to some other meaning, even though it might seem truer or more reasonable

than the one the plaintiff bases his action on. Smid v. Bernard, 31 Misc. Rep. 35, 63 N. Y. Supp. 278, and cases there cited. In the recent case of Morse v. Publishing Co., 49 App. Div. 375, 63 N. Y. Supp. 423, the learned justice writing cites from Odgers the English rule of practice, that if the plaintiff fails on the meaning he has alleged in his pleading he may on the trial fall back on the natural meaning of the words. But that is the English rule only because under the present system of pleading in England the complaint in such case is deemed to have two counts, one being upon the words in their natural meaning, and when the count alleging the particular meaning fails the plaintiff falls back upon the other count. This was the former way of pleading, and by a rule the present reformed pleading in England is to be deemed to the same effect. Townsh. Sland. & Lib. § 338, and note. But we have no such rule, and its citation here is incongruous and inapplicable. I do not understand the point to have been decided in the case cited. There is no implication in the present publication of a violation of the said section of the Penal Code. It relates only to facilitating the actual escape of prisoners out of prison, whereas Goldsmith was not in prison.

The demurrer is sustained.