## BEECHER v. PRESS PUB. CO.

(Supreme Court, Appellate Division, Second Department. April 19, 1901.)

1. LIBEL—AMBIGUITY—INNUENDO—INTERPRETATION BY PLAINTIFF.

Where language alleged to be libelous is ambiguous, and plaintiff has alleged an innuendo which would make the language libelous per se, he is bound by the construction so given, so that, when the court decides that the words used are not capable of the meaning alleged, he cannot recover on a meaning different from that pointed out, and the court should direct a verdict for defendant.

2. SAME—SUBSTANTIAL IMPUTATION.

Defendant printed a newspaper article stating that plaintiff had obtained possession of certain securities belonging to his father, and only returned them on receipt of a letter from a friend of the father demanding that the securities be returned, or plaintiff leave the city. *Held* that, in an action for libel, it was not necessary for defendant to show that such letter had been written in substance as printed, but that proof of the truth of the substantial imputation was a complete defense.

Appeal from trial term, Kings county.

Action by Eugene F. Beecher against the Press Publishing Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and SEWELL, JJ.

John M. Bowers, for appellant.
Herbert S. Worthley, for respondent.

SEWELL, J. This is an action to recover damages for an alleged libelous article in the defendant's newspaper, the World. The defendant published of and concerning the plaintiff the following:

### "Edward Beecher's Big Heart.

"There were many who regarded old Dr. Edward as the best and greatest of the Beecher family,—the biggest hearted and broadest minded. Fifteen of these admirers, including the Rev. R. R. Meredith, pastor of the Tompkins Avenue Congregational Church, and S. V. White, of Wall street fame, gave one hundred dollars each, annuany, to Dr. Beecher's support. At that time, early in the '90's, the only inmates of the Beecher house, in Macon street, were the doctor, his wife, and their adopted daughter.

### "Eugene F. Beecher.

"Eugene F. Beecher, a younger son, married a wealthy Brooklyn girl, and lived in a handsome house in Brooklyn. Frederick W. Beecher, the elder brother, was at that time a Presbyterian minister, presiding over a church in the northern part of the state. 'Come to see me at once,' wrote the old doctor to Dr. Meredith one day. 'I am in sore trouble and need your advice.' Dr. Meredith lived at No. 97 McDonough street, only a short distance from Dr. Beecher's house. Within ten minutes of the receipt of this alarming message the kindly pastor of Tompkins Avenue Congregational Church was with his old friend. Dr. Beecher then explained that his son Eugene had obtained possession of certain valuable securities belonging to him, and had refused to return them. Investigation revealed the fact that Dr. Beecher had fallen heir to· considerable property, including the Macon street house, on the death of a relative.

### "Eugene Returned Securities.

"Dr. Meredith handled Eugene Beecher without gloves. In a letter to the young man, Dr. Meredith gave him a choice of alternatives in words like these: 'Return those securities to your father within twenty-four hours, or get out of Brooklyn. You can't keep them and continue to live in this city, where your family has held an honorable and distinguished position.' The securities were returned. They were all turned over to S. V. White, who handled them to the best advantage for Dr. Edward Beecher, releasing the faithful coterie from further donations."

The complaint is in the usual form, and charges that the matter was false and defamatory; that it was published with malice, intending to injure the plaintiff in his reputation; and that the intent and purpose of the matter was to charge and impute against the plaintiff the commission of a crime, in that the effect of said matter and article was to charge the plaintiff with having stolen certain bonds belonging to his father, and that he only returned said bonds because of the threat contained in the letter alleged to have been written by the Rev. Dr. Meredith to the plaintiff. The plaintiff also alleged that by reason of the premises he has been injured in his reputation for honest and upright dealing in the community, to his damage in the sum of $25,000. The defendant admitted the publication of the article, but denied that the intent and purpose of the matter was to charge and impute against the plaintiff the commission of a crime, or that the effect of said matter or article was to charge the plaintiff with having stolen certain bonds belonging to his father. The defendant also alleged separate and distinct facts tending to show the truth of the article published, in justification, and in mitigation of damages.

At the close of the case the defendant asked the court to direct a verdict in its favor upon the ground "that the article, as published, is not libelous per se, and that it is not subject to the innuendo of the complaint." The court refused, but held that it was not subject to the innuendo of the complaint, or "to any construction which makes it accuse him of larceny." The court charged the jury that the article

was not libelous as a matter of law, and that they were not to interpret what was published as charging the plaintiff with larceny. The court also charged that all of the publication was practically true, down to the statement of what Dr. Meredith wrote to the plaintiff, and submitted to the jury whether the publication, so far as it stated what Dr. Meredith wrote, was defamatory,—whether it was calculated to diminish the man in the esteem of society. The court charged the jury that, when defamatory matter is published, it can be justified by proving its truth, and then said:

"Have they proved that Dr. Meredith judged the plaintiff as they have said he did? That is where the sting of this libel lies, if it has any,—that they said Dr. Meredith, having heard the facts from the plaintiff's father, wrote a letter, the substance of which they give. Having charged that, they could justify it absolutely if they could prove it was true in substance. Now, take Dr. Meredith's evidence on the stand, and, if you find from that evidence that their publication in that respect was substantially true, then there is no case. It is not necessary, of course, that the defendant should prove that Dr. Meredith wrote precisely those words. It would be sufficient if it proved that he did write that in substance,—that which had the same substantial meaning as the words which it said he wrote. But under this pleading it is only its truth which will justify it. * * * Was it true, as they stated, that Dr. Meredith, having heard the case from Dr. Beecher, was so impressed with the heinousness of what this plaintiff was guilty of that he wrote to him a letter in which he said: 'Return the securities to your father within twenty-four hours, or get out of Brooklyn. You cannot keep them and continue to live in this city, where your family has held an honorable and distinguished position.'"

It is the law of this state that, where the matter contained in a publication is unambiguous and admits of but one sense, the question of libel or no libel is one of law, which the court must decide. Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214. It is equally well settled that where, as in this case, the language is capable of being construed in an innocent and harmless, as well as an injurious, sense, an innuendo to point out the meaning which the plaintiff claims to be the true meaning, and the one upon which he relies to sustain his action, is necessary to the sufficiency of the statement of a cause of action. Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, 20 L. R. A. 440; Kingsbury v. Bradstreet Co., 116 N. Y. 211, 22 N. E. 365. Where a plaintiff by an innuendo gives a construction to the language published, he is bound by it. It becomes a part of the cause of action stated. He cannot start a fresh innuendo, or obtain a verdict on a meaning different from that pointed out in the innuendo. If the jury negative the innuendo, or if the court determine that the words used are not capable of the meaning alleged in the innuendo, judgment must pass for the defendant. Odgers, Lib. & Sland. p. 101; Townsh. Sland. & Lib. § 338; Newell, Defam. p. 829. It has been held that, where the words are unambiguous and admit of but one sense, if the plaintiff has alleged an innuendo he cannot fall back upon the natural meaning, but must be nonsuited, even though the words have a libelous meaning. Butler v. Wood, 10 How. Prac. 222; Westbrook v. Association, 32 Misc. Rep. 37, 65 N. Y. Supp. 399. However that may be, the court having held in the present case that the matter contained in the publication, when construed according to its natural meaning,

was not libelous, as a matter of law, and that the meaning alleged by way of innuendo was not the meaning conveyed, it is clear that the court erred in refusing to direct a verdict for the defendant.

It may further be observed that, to justify the publication, it was not necessary for the defendant to prove that Dr. Meredith judged the plaintiff as stated in the publication, or that he wrote as therein stated, or "that which had the same substantial meaning as the words which it said he wrote." It was only necessary to prove the truth of the substantial imputation, and not that Dr. Meredith was truthfully reported. The publication not being a libel per se, the plaintiff was not entitled to recover general damages; and, as no special damages were alleged or proved, there was no question for the jury on that subject. Keene v. Association, 76 Hun, 488, 27 N. Y. Supp. 1045; Woodruff v. Bradstreet Co., 116 N. Y. 217, 22 N. E. 354, 5 L. R. A. 555; Moore v. Francis, supra.

My conclusion, therefore, is that the judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.