Michael YESNER and MGM Court
Reporting Service, Inc., Plaintiffs,

v.

Beth J. SPINNER, individually and
d/b/a B & T Reporting,
Defendant.

No. CV–90–3547 (ADS).

United States District Court,
E.D. New York.

May 25, 1991.

Harry R. Dreizen, Huntington, N.Y., for plaintiffs.

Shea & Gould, New York City (William Dunnegan, of counsel), for defendant.

MEMORANDUM DECISION
AND ORDER

SPATT, District Judge.

This litigation arises out of a dispute between two court reporters concerning work that one reporter subcontracted with the other to perform. The dispute culminated in a letter being sent by the defendant to the Federation of Shorthand Reporters claiming that the plaintiff has a "practice of modifying transcripts" and that he "refus[es] to pay for the agreed upon rates". It is these two statements that form the basis of this defamation action.

The defendant moves pursuant to Fed.R.Civ.P. 56(b) for summary judgment to dismiss the complaint as a matter of law, and also pursuant to Fed.R.Civ.P. 11 for sanctions against counsel for plaintiff. For the reasons that follow, both motions are denied.

## I. FACTUAL BACKGROUND

The following facts are undisputed, except where indicated otherwise.

Plaintiff Michael Yesner ("Yesner"), is a certified court reporter and the president and sole shareholder of the plaintiff MGM Court Reporting Service, Inc. ("MGM"). Defendant Beth Spinner is also a certified court reporter, doing business as B & T Reporting ("B & T").

On May 16, 1990, Yesner received a request from a regular client of his, the law firm of McCormick Shaw & Moremus, to provide a court reporter for a deposition in connection with a state-court action pending in Richmond County, New York the following day. Due to short notice and Yesner's prior commitments, he was unable to provide a reporter from MGM, but subcontracted with the defendant B & T to cover the deposition.

The deposition took place as scheduled on May 17, 1990. Afterward, Spinner sent Yesner a copy of the transcript and statement for services rendered on June 13, 1990. Upon a review of the transcript,

Yesner immediately notified Spinner that it was unacceptable, since it was allegedly replete with errors. He refused to pay Spinner.

On or about June 21, 1990, Spinner contacted the law firm of McCormick Shaw & Moremus directly, and spoke with Edith Alacan, the office manager. At this point, the parties' versions of what transpired in that conversation differ. However, after the conversation, Alacan contacted Yesner, allegedly stating to Yesner that the law firm would no longer utilize the services of Yesner or MGM.

Yesner then sent a letter to Spinner, dated June 22, 1990, advising her that Yesner lost the McCormick Shaw & Moremus account as a result of Spinner's conversation with Alacan. In turn, Spinner wrote a two-page letter dated June 27, 1990 to the Federation of Shorthand Reporters, with copies sent to the State Board of Shorthand Reporting, MGM, McCormick Shaw & Moremus, James Cameron, Esq. and Jerome Balch, Esq. The letter stated, in pertinent part, as follows:

> "In addition to this, Mr. Yesner in his letter dated June 22, 1990 has indicated his plans for legal action. Obviously, this situation does concern me, but more importantly, *Mr. Yesner's practice of modifying transcripts and secondly, his refusal to pay agreed upon rates concerns me more*" (emphasis supplied) ("the June 27 Letter").

Yesner thereafter commenced this action alleging tortious interference with business relations and libel stemming from these two alleged defamatory statements contained in the June 27 Letter.

Defendant Spinner now moves pursuant to Fed.R.Civ.P. 56(b) for summary judgment on the following grounds: (1) the two statements contained in the June 27 Letter are not defamatory as a matter of law; (2) even if the statements are defamatory, the plaintiff has not sustained damages and is therefore entitled only to nominal damages, if any; and (3) actual damages, if any, were not caused by either of the two statements in the June 27 Letter. Spinner also moves pursuant to Rule 11 for sanctions on the ground that the plaintiff states in his complaint that he has lost McCormick Shaw & Moremus as a client, when in fact he has not.[1]

## II. DISCUSSION

### a. *Summary Judgment Standard.*

Summary judgment shall be granted in favor of a party if it is demonstrated that there are no genuine issues of material fact for trial, and that the movant is entitled to judgment as a matter of law (*see* Fed.R. Civ.P. 56[c]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists (*see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990]). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see Rattner v. Netburn*, 930 F.2d 204 [2d Cir.1991]). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. IncomRx Sys.*

---

1. Although the plaintiff also "requests" the Court to impose sanctions upon counsel for the defendant for interposing this motion for summary judgment on the ground that counsel failed to undertake a reasonable inquiry of the state of the law of defamation, since it has not been presented by way of a formal motion, the Court declines to consider such an informal application.

*Ltd. Partnership,* 912 F.2d 23, 27 [2d Cir. 1990]).

### b. *The Defendant's Challenges.*

In this diversity action, the Court assumes, since the parties rely on and do not dispute, that New York law governs (*see, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137 [2d Cir.1991] [parties "assumed" New York law governed by relying on New York law to support their respective positions]).

### (1) *The Defamatory Nature of the Statements.*

▮▮ Whether or not particular spoken or written words are reasonably susceptible to a defamatory meaning is a question of law for the Court to determine in the first instance (*Kelly v. Schmidberger,* 806 F.2d 44, 46 [2d Cir.1986] [construing New York law]; *see also Weiner v. Doubleday & Co.,* 74 N.Y.2d 586, 549 N.E.2d 453, 550 N.Y.S.2d 251 [1989]; *Aronson v. Wiersma,* 65 N.Y.2d 592, 483 N.E.2d 1138, 493 N.Y. S.2d 1006 [1985]; *Russo v. Padovano,* 84 A.D.2d 925, 446 N.Y.S.2d 645 [4th Dep't 1981]). In making this determination, the Court must consider the alleged defamatory statements when read in context of the entire letter or article within which they appear (*Sharon v. Time, Inc.,* 575 F.Supp. 1162, 1165 [S.D.N.Y.1983], *citing James v. Gannett Co.,* 40 N.Y.2d 415, 419, 353 N.E.2d 834, 837, 386 N.Y.S.2d 871, 874 [1976]), "and the statements should be construed together and measured by the effect they would have on the average reader" (*Russo v. Padovano, supra,* 446 N.Y.S.2d at p. 647 [citing cases]).

▮▮ Both statements contained in the June 27 Letter viewed as a whole, are ambiguous at best to the "average reader". "[W]ords not actionable in themselves may become so by being spoken of persons engaged in a particular calling or profession. Thus, words are libelous if they affect a person in his profession, trade, or business, by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof" (*Four Star Stage Lighting, Inc. v. Merrick,* 56 A.D.2d 767,

392 N.Y.S.2d 297, 298 [1st Dep't 1977], *citing* 34 N.Y.Jur., *Libel and Slander* § 36, at p. 507).

It is not clear, nor is there any proof on the issue, of whether the "practice of modifying transcripts" is a dishonest practice in the court reporting industry. The reasonable interpretation could be that "modifying" merely refers to "editing", which may not necessarily be a disparaging remark. On the other hand, an equally tenable construction could be that "modifying" connotes an improper or unethical practice of "changing" transcripts, so as to alter the substantive testimony which would be dishonest. In sum, the statement, the "practice of modifying transcripts" presents a classic jury question.

As to the statement "refusal to pay agreed upon rates", this too is reasonably susceptible of a defamatory meaning in the context within which it was written. It is not clear whether the term "practice" refers also to "refusal to pay agreed upon rates", or merely to the "practice of modifying transcripts". Although the Court has doubts as to the defamatory nature of this statement, such a writing directed at the plaintiff's business practices could give rise to the inference that the plaintiff is dishonest and engages in misconduct or even fraud. At this stage of the litigation, the Court declines to find, as a matter of law, that this statement has no defamatory connotation. Accordingly, the Court finds that this is also a question for the jury.

Based on the papers submitted, the Court cannot say that the statements at issue made under these circumstances are not defamatory, as a matter of law. In such a case where the words are susceptible of several meanings, one of which is defamatory, it is for the jury to decide in which sense the words were used (*see November v. Time, Inc.,* 13 N.Y.2d 175, 194 N.E.2d 126, 244 N.Y.S.2d 309 [1963]). Therefore, the motion of the defendant for summary judgment on the ground that the two statements contained in the June 27 Letter are not defamatory as a matter of law, is denied.

(2) *Damages.*

The defendant next contends that even if the two statements are reasonably susceptible to a defamatory meaning, the plaintiff has not pleaded or sustained any actual damages caused therefrom and is therefore entitled only to nominal damages, if any.

█ It has long been the law in New York that a defamatory statement that is a direct attack upon the business, trade or profession of the plaintiff is considered defamation "per se", and therefore actionable without any proof of special damages (*see, e.g., Moore v. Francis*, 121 N.Y. 199, 23 N.E. 1127 [1890]; *Kingsbury v. The Bradstreet Co.*, 116 N.Y. 211, 22 N.E. 365 [1889]). At common law, it was not necessary for a private plaintiff to plead or prove special damages with respect to a libel per se involving matters of purely private concern (*see Matherson v. Marchello*, 100 A.D.2d 233, 473 N.Y.S.2d 998 [2d Dep't 1984]; *see also* 2 *New York Pattern Jury Instructions—Civil* § 3:29, comment [Supp.1990] [collecting cases]). Such damages are presumed.

█ The statements contained in the June 27 Letter are clearly libel per se since a jury could find that they directly impugn the plaintiff's integrity, and allege misconduct, unfitness, dishonesty and/or fraud in connection with his business. These words, construed in their natural meaning, could reasonably permit a fact-finder to conclude that they are libelous insofar as they tend to disparage the plaintiff in his trade, business or profession (*see Laboratory of Chromatography, Inc. v. Eastern Laboratories, Ltd.*, 112 A.D.2d 143, 490 N.Y.S.2d 832, 834 [2d Dep't 1985]; *Grimaldi v. Schillaci*, 106 A.D.2d 728, 484 N.Y.S.2d 159, 161 [3d Dep't 1984]; *Bleecker Charles Co. v. Consolidated Edison Co. of New York Inc.*, 105 Misc.2d 248, 431 N.Y.S.2d 856, 858 [Sup.Ct. New York County 1980]). Therefore, proof of special damages is not required. Damage to the reputation of the person defamed under such circumstances is presumed, and the plaintiff need not plead or establish them as an element of his libel cause of action; as such, his failure to do so does not require

the granting of the defendant's motion for summary judgment (*see 60 Minute Man, Ltd. v. Kossman*, 161 A.D.2d 574, 555 N.Y. S.2d 152 [2d Dep't 1990]).

Despite the well-settled common law, the Supreme Court in recent years has placed limitations on the law of defamation in light of the First Amendment implications. Although the Court has concluded that the statements constitute libel per se, it must now be determined whether the First Amendment places any restrictions on the recovery of "presumed" damages under such circumstances.

The Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), held that the states could not permit the recovery of presumed damages absent a showing of "actual malice" under the *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) standard, when it involves a subject of public concern. However, eleven years later in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the Court held that if the person allegedly defamed is *not* a public figure and the matter is *not* of public concern, such a private plaintiff may recover presumed damages without proving *New York Times'* "actual malice".

█ This action clearly falls within the *Dun & Bradstreet* category of cases, in that it involves a private-figure plaintiff concerning matters not of public concern. The question now becomes whether in light of *Dun & Bradstreet* the New York courts nonetheless permit the recovery of presumed damages under such circumstances as they did pre-*Gertz* (*see Davis v. Ross*, 107 F.R.D. 326, 330 n. 3 [S.D.N.Y.1985] [court predicting New York courts will readopt the pre-*Gertz* rule in private-figure plaintiff/matters of private concern cases]). As was predicted in *Davis v. Ross, supra*, the New York courts post-*Dun & Bradstreet* have in fact returned to the pre-*Gertz* state of the law by permitting presumed damages in cases involving private plaintiffs on matters of private concern (*see, e.g., 60 Minute Man, Ltd. v.*

*Kossman, supra,* 555 N.Y.S.2d at p. 154 ["Indeed, where the defamatory speech has no 'public concern' content, the rule against presumed damages does not apply" in an action by a non-public figure plaintiff]; *King v. Tanner,* 142 Misc.2d 1004, 539 N.Y.S.2d 617, 621 [Sup.Ct. Westchester County 1989] [rejecting *Times* "actual malice" standard post-*Dun & Bradstreet,* and imposing only burden of showing "common-law malice", *i.e.,* "ill-will or spite"]).

Accordingly, since the statements made here are directed at a private-figure plaintiff and involve a matter of purely private and not public concern, under New York law, the plaintiff need not demonstrate *New York Times* "actual malice" in order to recover "presumed" damages.

As stated above, the statements contained in the June 27 Letter, to the extent the jury finds them to be defamatory at all, are libelous per se since they directly impugn the plaintiff's integrity, and allege misconduct, unfitness, dishonesty and/or fraud in connection with his business. These words, construed in their natural meaning, could reasonably permit a factfinder to conclude that they are libelous by disparaging the plaintiff in his trade, business or profession (*see Laboratory of Chromatography, Inc. v. Eastern Laboratories, Ltd.,* 112 A.D.2d 143, 490 N.Y.S.2d 832, 834 [2d Dep't 1985]; *Grimaldi v. Schillaci,* 106 A.D.2d 728, 484 N.Y.S.2d 159, 161 [3d Dep't 1984]; *Bleeker Charles Co. v. Consolidated Edison Co. of New York Inc.,* 105 Misc.2d 248, 431 N.Y.S.2d 856, 858 [Sup.Ct. New York County 1980]). Therefore, proof of special damages is not required. Damage to the reputation of the person defamed under such circumstances is presumed. The plaintiff need not establish damages as an element of his libel cause of action and his failure to do so does not require the granting of the defendant's motion for summary judgment (*see 60 Minute Man, Ltd. v. Kossman, supra*).

Therefore, the motion of the defendant for summary judgment on the ground that the plaintiff failed to plead or prove special damages, is denied.

**(3)** *Rule 11 Sanctions.*

The defendant seeks sanctions pursuant to Fed.R.Civ.P. 11 on the ground that the complaint, signed by counsel for plaintiff, contains two paragraphs (*i.e.,* 15 and 18), which are false. Specifically, the defendant contends that counsel for the plaintiff failed to make "reasonable inquiry" as to the factual basis for each of the statements made in both paragraphs.

Paragraph 15 alleges the following:

"15. The statement that plaintiff Yesner has a practice of modifying transcripts is false and defamatory, was maliciously made and maliciously published by defendant."

Paragraph 18 of the complaint, provides as follows:

"18. The statement made by the defendant SPINNER damaged the plaintiff MGM by causing the law firm of McCormick, Shaw & Moremus, a customer of MGM, to stop using the Court Reporting Service of MGM."

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part, that,

"The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

**54**

Put simply, a signature placed on a paper filed with the Federal Court, "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without any improper motive" (*Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, —— U.S. ——, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 [1991]).

■ The imposition of sanctions is mandated when the Court finds one of the following situations exist:

> "(1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands" (*International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 [2d Cir.1989]).

*(See also Investors Ins. Co. of Am. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 106 [2d Cir.1990]).

Rule 11 was enacted to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process" (*McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21 [2d Cir.1990]; *see also* Fed.R. Civ.P. 11 advisory committee's note, *reprinted in* 97 F.R.D. 165, 198 [1983] ["should ... help to streamline the litigation process by lessening frivolous claims or defenses"]). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the district court that this document is to be taken seriously" (*Business Guides, Inc. v. Chromatic Communications Enters., Inc., supra*, 111 S.Ct. at p. 930).

■ Sanctions should be sparingly imposed, however, and care should be taken to avoid chilling creativity or stifling enthusiasm or advocacy (*see Security Indus. Ass'n v. Clarke*, 898 F.2d 318, 322 [2d Cir.1990]; *see also McMahon v. Shearson/American Express, Inc., supra*, 896

F.2d at p. 22). Once a violation is found to exist though, the Rule is mandatory and the Court *must* impose a sanction (*see O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 [2d Cir.1990]).

■ Applying the "objectively reasonable" test as this Court must (*see Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 [2d Cir.1985]; *see generally* Note, *Rule 11 And Papers Not Warranted By Law*, 58 Fordham L.Rev. 1085 [1990] [discussing varying standards employed by the courts] ), the Court finds that as to the statement contained in paragraph 15, it is well-grounded in fact, especially in light of the finding that the import of the words are reasonably susceptible to a defamatory meaning and constitute libel per se.

■ As to the statement contained in paragraph 18, the defendant alleges that the plaintiff Yesner testified at a deposition that he believed he lost the McCormick Shaw & Moremus account as a result of the June 21, 1990 telephone conversation between the law firm and Spinner. In the complaint, however, he alleges that he lost the business as a result of the June 27 Letter.

In light of the affidavits submitted by the plaintiff Michael Yesner and his attorney Harry R. Dreizen, Esq., in this Court's view, the plaintiff's counsel did undertake a reasonable inquiry *prior* to the signing of the pleading. If the plaintiff takes a different or seemingly contradictory position during discovery, this of course, may be freely explored by counsel upon the cross-examination of Yesner at trial. It should not, however, form the basis of the imposition of sanctions when there is proof that a "reasonable inquiry" was undertaken.

### III. CONCLUSION

For the foregoing reasons, the motion by the defendant for summary judgment pursuant to Fed.R.Civ.P. 56(b), is denied, as is the motion for sanctions pursuant to Fed. R.Civ.P. 11.

SO ORDERED.