**EL GRECO LEATHER PRODUCTS CO., INC. d/b/a Candie's International, Plaintiff,**

**v.**

**SHOE WORLD, INC., d/b/a Gussini, Defendant.**

No. 83 Civ 5376.

United States District Court, E.D. New York.

Dec. 11, 1985.

J. Joseph Bainton, Steven H. Reisberg, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff.

Edward V. Filardi, Brumbaugh, Graves, Donohue & Raymond, M. Marc Dahan, Dahan & Nowick, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

El Greco Leather Products Co., Inc. ("El Greco") initiated this action against Shoe World, Inc. ("Shoe World") in December 1983 alleging, *inter alia*, trademark infringement and unfair competition. In response, Shoe World alleged counterclaims for defamation, trade defamation and disparagement, tortious interference, unfair competition, prima facie tort and abuse of civil process. After a hearing held on January 10 and January 19, 1984, I denied El Greco's application for a preliminary injunction restraining Shoe World from using the mark "CANDIE'S" on any goods sold by Shoe World, finding that El Greco had failed to establish the existence of irreparable harm. In a decision dated December 21, 1984, I denied El Greco's request for a

permanent injunction, ruling against its claims on the merits, and finding that the balance of equities did not weigh in its favor. *El Greco Leather Products Co. v. Shoe World, Inc.*, 599 F.Supp. 1380 (E.D.N. Y.1984).

This action is now before me on cross-motions. Shoe World has moved under Fed.R.Civ.P. 11 for an award of attorney's fees for the costs of defending this entire action. El Greco has responded asserting that it should be awarded fees for the costs of defending against Shoe World's motion. In addition, El Greco has moved for summary judgment dismissing Shoe World's claims against it. I will deal with each of these motions in turn.

### I. Rule 11 Motions

#### A. Shoe World's Motion

■ This Circuit has recently framed a standard to be used in deciding Rule 11 motions:

> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985) (emphasis in original) (footnote omitted). Shoe World's motion seeks the imposition of sanctions for each of the wrongs redressable under Rule 11—it attacks both the factual and legal underpinnings of El Greco's lawsuit, and alleges that the entire lawsuit was instituted "with the specific intent to publicize falsehoods about Shoe World for [El Greco's] own unfair gain and to harass Shoe World." Shoe World's Brief at 2.

A brief review of the history of this litigation, as recounted in my earlier decision, will be helpful in deciding Shoe World's motions:

> [El Greco] filed this action, along with an order to show cause for a temporary

restraining order and preliminary injunction, on December 13, 1983. The complaint alleges that [Shoe World] sold shoes which "duplicate shoe styles of [El Greco]" and are "counterfeit." ...

On December 20, 1983, a temporary restraining order was entered by this Court enjoining [Shoe World] from selling shoes bearing plaintiff's trademark CANDIE'S. On December 30, 1983, the temporary restraining order was vacated by Judge Platt on a showing that the allegedly infringing shoes had been originally made at plaintiff's request by one of its Brazilian manufacturers and were not "counterfeit" within the usual meaning attached to that word.

599 F.Supp. at 1389. Notwithstanding Judge Platt's action, El Greco pressed its request for an injunction:

[El Greco] adheres to the position that these CANDIE'S shoes are "counterfeit" because even if the Brazilian factories could be found to have legitimately applied the mark to the shoes, [El Greco's] cancellation of the various shoe orders impliedly revoked the manufacturer's authority to dispose of any of the shoes without removing the CANDIE'S mark. [El Greco] urges that its mark is infringed because it did not authorize the sale of its cancelled goods.

Id. at 1390 (footnote omitted).

On the record developed before me, I concluded "that the goods in controversy are 'genuine' CANDIE'S shoes which may have been improperly disposed of by [El Greco's] Brazilian manufacturers." Id. Having arrived at this factual conclusion, I then considered and rejected El Greco's "claims for trademark infringement for the allegedly unauthorized sale of genuine goods." Id.

In light of this history, Shoe World's motion is framed somewhat in the alternative, focusing on the source of the goods that were the subject matter of this suit. Shoe World argues that to the extent that El Greco did not know that these goods had originated from its Brazilian manufacturer, it had failed to make the "reasonable inquiry" required by Rule 11. On the other hand, to the extent that El Greco's president did have information about the source of the allegedly infringing shoes, the allegation in El Greco's complaint and in its papers in support of a temporary restraining order that these shoes were "counterfeit" was, according to Shoe World, an attempt to foist a fraud on this court and could only have been made with the intent of damaging Shoe World's reputation.

Despite Shoe World's arguments, I am not persuaded that this is a case in which Rule 11 sanctions should be imposed. I cannot conclude that El Greco did not make a "reasonable inquiry" before proceeding with this lawsuit. This is not a case in which "there is not the slightest suggestion in any paper before the Court that *any* inquiry was made to lend some assurance that the allegations of the complaint were well grounded in fact." *Viola Sportswear, Inc. v. Mimun,* 574 F.Supp. 619, 621 (E.D. N.Y.1983) (emphasis in original). It is clear that El Greco did make some inquiry; it is also clear that it might have done more. However, Rule 11 does not require courts to make a *post hoc* assessment of the precise amount of investigation that should have been made prior to the filing of a lawsuit: "Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Eastway, supra,* 762 F.2d at 254.

The weightier charge leveled by Shoe World is that El Greco knew the source of the shoes, yet brought this lawsuit alleging that the shoes were "counterfeit" with the intent to tarnish Shoe World's reputation. This charge is essentially an argument that, given the facts of this case, this lawsuit is legally baseless—that it should never have been brought in the first place, and that, when El Greco learned the source of the shoes, it should have been discontinued. I admit that I am troubled by El Greco's use of the word "counterfeit" to describe merchandise whose sale by the manufacturer was unau-

thorized but which is otherwise genuine. I find this usage to be at best, exaggerated, and at worst, misleading. Nevertheless, I cannot conclude that the underlying legal issue, whether the unauthorized sale of otherwise genuine goods can constitute some form of trademark infringement, is a frivolous one. Although I ruled against El Greco on all of its arguments, an unsuccessful lawsuit is not necessarily a baseless one punishable under Rule 11. Rule 11 has been violated "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway, supra,* 762 F.2d at 254. On this basis, Shoe World's Rule 11 motion is denied.[1]

### B. El Greco's Motion

■ On the basis of the same principle, El Greco's motion for Rule 11 sanctions must also be denied. As Shoe World correctly points out, the possibility of a Rule 11 motion was contemplated early on in these proceedings. Although I have just denied that motion, I cannot find that Shoe World has acted in bad faith in bringing this motion, or that the motion itself "was destined to fail." *Eastway, supra,* 762 F.2d at 254. Accordingly, El Greco's motion is denied.

### II. El Greco's Motion for Summary Judgment

El Greco has moved for summary judgment of Shoe World's six counterclaims claiming that each is deficient as a matter of law. Shoe World's counterclaims are all in the same vein as its Rule 11 motion. All allege in some fashion that El Greco initiated this lawsuit in bad faith and with the intent of injuring Shoe World. I have ruled adversely on Shoe World's Rule 11 motion; however, the role of this Court in deciding a motion for summary judgment is a narrow one:

> [T]he responsibility of the district judge on a motion for summary judgment is

merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits.

*Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975). Nevertheless, for the reasons set forth below, I find that El Greco's motion should be granted in full.

### A. Defamation

■ Shoe World's first counterclaim, and the one most strenuously contested by both parties, is an action for defamation. The focus of Shoe World's claim is an article published in *Footwear News,* a trade publication, on December 19, 1983, one week after the filing of the complaint in this action. That article, it is contended, contained "false and derogatory statements to the effect that Shoe World was engaged in counterfeiting and other unfair trade practices, including trademark infringement...." Shoe World's Answer at ¶ 35. Shoe World contends, and El Greco does not contest, that a copy of the papers in this action was delivered to a reporter for *Footwear News* by El Greco, and that a spokesman for El Greco, Neil Cole, provided the reporter with further information about El Greco's charges against Shoe World. Shoe World thus seeks to hold El Greco responsible as the source of the allegedly defamatory information published in the *Footwear News* article.

El Greco responds that insofar as the statements published in *Footwear News* convey information about El Greco's lawsuit against Shoe World, they should be deemed absolutely privileged because of Section 74 of the New York Civil Rights Law. That statute provides, in pertinent part:

> A civil action cannot be maintained against any person, firm or corporation for the publication of a fair and true report of any judicial proceeding....

N.Y.Civ.Rights L. § 74 (McKinney's 1976). On its face, Section 74 would appear to present a complete defense for El Greco, warranting dismissal of this claim. Shoe

---

**1.** Shoe World's motion is also denied insofar as it relies on 15 U.S.C. § 1117 (1982).

World, however, offers three reasons why its claim should not be dismissed. First, it argues that this case falls within a judicially-created exception to Section 74. Second, it contends that even if Section 74 does apply generally, the *Footwear News* article, insofar as it contains information not made explicit in El Greco's complaint, is not "a fair and true report" subject to protection under the statute. Finally, it suggests that its claim for defamation is not limited solely to the statements published in *Footwear News*.

The most substantial issue put forth by Shoe World is whether, despite the interdiction of Section 74, this action should be permitted to continue under the exception created in *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969). In *Williams,* the New York Court of Appeals upheld against a motion to dismiss, a claim that an action had been instituted "for the sole purpose of republishing the libelous statements set forth in the complaint...." *Branca v. Mayesh,* 101 A.D.2d 872, 476 N.Y.S.2d 187, 188 (2d Dep't), *aff'd on opinion below,* 63 N.Y.2d 994, 483 N.Y.S.2d 1011, 473 N.E.2d 261 (1984). Shoe World argues that this case fits within the confines of the *Williams* exception, alleging that "[El Greco] maliciously instituted this lawsuit for the collateral and insidious purposes of falsely labelling Shoe World as a counterfeiter and communicating that charge to the footwear trade." Shoe World's 3(g) Statement at ¶ 5. While such an allegation would suffice to uphold a claim against a motion to dismiss, this Court must determine, on a motion for summary judgment, whether Shoe World "has alleged facts which, if proven, would fall within the *Williams* exception to Section 74." *Bridge C.A.T. Scan Associates v. Ohio Nuclear Inc.,* 608 F.Supp. 1187, 1195 (S.D.N.Y.1985).

Shoe World suggests that there are several facts in dispute that should prevent this Court from granting summary judgment. For example, it argues that El Greco's "malice and bad faith" can be inferred from the omission of certain facts from its complaint, e.g., the existence of prior dealings between the parties. Shoe World's Brief at 14–15; *see also* Shoe World's 3(g) Statement at ¶ 6. While these omissions may have skewed El Greco's presentation of its case, they do not support the inference that "the entire lawsuit was maliciously instituted for the purpose of disseminating defamatory material to the press." *The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.,* 413 F.Supp. 555, 561 n. 3 (S.D.N.Y.1976). The same must be said of Shoe World's argument that the use of the word "counterfeit" was too extreme: "a simple allegation of trademark infringement would have been sufficient." Shoe World's Brief at 14. Although I have already stated that this usage was troublesome, *see* p. 5 *supra,* I cannot conclude that the *Williams* exception to an otherwise absolute privilege, *see Williams, supra,* 23 N.Y.2d at 597–98, 298 N.Y.S.2d at 477–78, 246 N.E.2d at 335–37, was meant to extend to every overzealous but ultimately unsuccessful litigant.

A far more troubling accusation made by Shoe World is that El Greco deliberately delayed the filing of this lawsuit and the attendant publicity of the *Footwear News* article "to coincide with the National Shoe Show and Volume Retailers Shoe Show held in New York City in December 1983 in order to ensure rapid and widespread dissemination of [El Greco's] defamatory statements to the footwear trade." Shoe World's 3(g) Statement at ¶ 8; *see also* April 26, 1985 Affidavit of Paul Gussin at ¶¶ 3–7. Such an accusation, if proven, could lead a jury to conclude that this entire lawsuit was a "perversion of judicial proceedings," *Williams, supra,* 23 N.Y.2d at 599, 298 N.Y.S.2d at 479, 246 N.E.2d at 337, not within the contemplation of the New York Legislature in enacting Section 74. This accusation, however, is not borne out by the undisputed facts made known to this Court. El Greco's counsel, attaching contemporaneous documents whose genuineness has not been questioned, has informed the Court that the shoe shows referred to by Shoe World ran from December 3–6 and December 4–7, respectively.

May 8, 1985 Affidavit of J. Joseph Bainton at ¶ 3. In view of the fact that this action was not commenced until the 12th of December, and that the *Footwear News* article did not appear until December 19, Shoe World's accusation cannot be substantiated and cannot defeat this motion for summary judgment.

Finally, Shoe World cannot rely on the admissions it purports to have extracted from El Greco's officers. *See* Shoe World's Brief at 13–16. Although El Greco's President, Charles Cole, stated at his deposition that El Greco intended, in filing the suit, to distance itself from the shoes being offered by Shoe World, he explicitly denied that "the sole purpose of this lawsuit [was] to publicize it in 'Footwear News.'" Cole Dep.Tr. at 42. Moreover, the "admissions" of Mark Aarons, one of El Greco's lawyers, and Morton Cohen, El Greco's chief financial officer, run contrary to the showing that Shoe World is required to make. Aarons was asked:

Did you consider possible damage to the reputation of Shoe World by characterizing them as dealing in the sale of counterfeit merchandise prior to filing suit?

He responded:

That wasn't a characterization. They were selling counterfeit goods. Therefore, it required no analysis.

Aaron's Dep. at 40–41. Similarly, Cohen was asked:

Did you ever consider the impact on the reputation of Shoe World of filing this suit and labeling them as a counterfeiter or as dealing in counterfeit goods?

He answered:

I never considered that issue. The answer is no.

Cohen Dep.Tr. at 21. While these statements might perhaps be characterized as indicating carelessness or even recklessness on El Greco's part, they tend to negate, rather than support, the showing of knowing and purposeful bad faith that the *Williams* standard requires. Thus, they do not support Shoe World's argument that the application *vel non* of *Williams v. Williams* is "a genuine issue for trial." Fed. R.Civ.P. 56(e).

Shoe World's second line of argument, that the *Footwear News* article is not a "fair and true report" within the meaning of Section 74, is also unavailing. The New York Court of Appeals has advised that "[w]hen determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n v. New York Times Co.*, 49 N.Y.2d 63, 68, 424 N.Y.S.2d 165, 167, 399 N.E.2d 1185, 1187 (1979). There is no dispute that the article is a "substantially accurate" rendering of the allegations of El Greco's complaint. *Holy Spirit*, 49 N.Y.2d at 67, 424 N.Y.S.2d at 167, 399 N.E.2d at 1187. Shoe World argues, however, that in addition to providing *Footwear News* with a copy of the complaint in this action, Neil Cole, then Executive Vice-President of El Greco, "added further allegations not contained in the court papers...." Shoe World's Brief at 7. Bearing in mind the teaching of *Holy Spirit*, this Court finds that these further allegations "constitute[] background to the misconduct attributed to [Shoe World] in the complaint, *Ford v. Levinson*, 90 A.D.2d 464, 454 N.Y.S.2d 846, 848 (1st Dep't 1982), and thus do not remove the article from the protection of Section 74.

Shoe World argues finally that even if the statements in the *Footwear News* article are deemed privileged under Section 74, its cause of action for defamation should be upheld insofar as it alleges other defamatory statements made by El Greco officers independently of that article. In making its argument, Shoe World relies on its use of the words "and otherwise" in ¶ 34 of its answer. Shoe World's Brief at 10. El Greco is correct in responding that this argument runs afoul of New York C.P.L.R. 3016(a) (McKinney's 1974), which requires:

In an action for libel or slander, the particular words complained of shall be set forth in the complaint....

*See, e.g., Catterson v. Caso*, 472 F.Supp. 833, 840 (E.D.N.Y.1979) ("C.P.L.R. 3016(a)

requires the plaintiff in a libel and slander action to set forth the particular words complained of. Plaintiff having failed to do so, his defamation cause of action must be dismissed.").

Shoe World's counterclaim for defamation will be dismissed.

### B. Trade Defamation and Disparagement

Shoe World's second counterclaim is based on the same facts as its first counterclaim, Shoe World's Answer at ¶ 46, adding only that the reputation of Shoe World's products has been damaged as well. Accordingly, both parties have treated these claims as succeeding or failing together. In view of the fact that N.Y.Civ.Rights L. § 74 applies equally to defamation and trade libel suits, *Bridge C.A.T. Scan, supra*, 608 F.Supp. at 1193 n. 15, and in view of my determination as to Shoe World's first counterclaim, Shoe World's second counterclaim must also be dismissed.

### C. Tortious Interference

Shoe World's third counterclaim is pleaded under the heading, "Tortious Interference." Apparently believing this counterclaim to allege tortious interference with *contractual* relations, El Greco's original moving papers urged dismissal because of Shoe World's failure to specify the particular contract on which it based its claim. In response, Shoe World has explained that its action is one for tortious interference with *business* relations, a tort also known as "interference with either economic advantage, prospective advantage ... or pre-contractual relations." *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y.1983). The elements of this tort are as follows:

> [T]he defendant's interference with business relations existing between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are "dishonest, unfair or in any other way improper."

*Id., quoting Robbins v. Ogden Corp.*, 490 F.Supp. 801, 811 (S.D.N.Y.1980).

Even under this theory, however, Shoe World's complaint, considered along with the affidavits presented to the court in response to this motion for summary judgment, is insufficient. "[I]nterference with precontractual relations is actionable when a contract would have been entered into had it not been for the conduct of the defendant." *Robbins, supra*, 490 F.Supp. at 811. Shoe World's claim is deficient in failing to identify a particular contract or set of contractual negotiations that are the basis of this action. Moreover, it has failed to offer any facts which, if proved at trial, would show that this contract would have been entered into but for El Greco's interference. Because Shoe World has not set forth "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), its third counterclaim will also be dismissed.

### D. Unfair Competition

In arguing that its counterclaim for unfair competition should be upheld, Shoe World cites *Diehl & Sons, Inc. v. International Harvester Co.*, 445 F.Supp. 282 (E.D.N.Y.1978). In *Diehl*, the court upheld, against a motion to dismiss, "a claim for unfair competition by disparagement, which has been described as a species of the tort of injurious falsehood." 445 F.Supp. at 291. The court went on to explain that "[t]he gist of the tort ... is the interference with the prospect of sale or some other advantageous relation." *Id., quoting* W. Prosser, *Torts* § 128, at 919–20 (4th ed. 1971) (footnotes omitted). From this description, it appears that this claim is redundant to Shoe World's second and third counterclaims, *cf.* Fed.R.Civ.P. 12(f), and must be dismissed for the same reasons. Even if this claim is somehow independent, it is plain that it must be dismissed for its failure to allege special damages "with sufficient particularity." *Diehl*, 445 F.Supp. at 292. *See* p. 17 *infra*.

### E. Prima Facie Tort

Shoe World's fifth counterclaim is an action for prima facie tort. Prima facie tort has four elements:

(1) intentional infliction of harm,

(2) causing special damages,

(3) without excuse or justification,

(4) by an act or series of acts that would otherwise be lawful.

*Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984). In *Curiano,* the New York Court of Appeals found plaintiffs' complaint to be "insufficient to state a cause of action for prima facie tort insofar as it fails to plead special damages." *Id.* The same conclusion must be reached with regard to Shoe World's counterclaim. Shoe World's complaint alleges damages to its business, reputation and good will "in an amount not less than $42,000,000. Shoe World's Answer at ¶ 66. However, "[s]pecial damages must be alleged with sufficient particularity to identify actual losses." *Lincoln First Bank of Rochester v. Siegel,* 60 A.D.2d 270, 400 N.Y.S.2d 627, 633 (4th Dep't 1977). As one New York court has stated in dismissing a claim for prima facie tort, "damages pleaded in such round sums without any attempt at itemization, must be deemed allegations of general damages." *Leather Development Corp. v. Dun & Bradstreet, Inc.,* 15 A.D.2d 761, 224 N.Y.S.2d 513, 514 (1st Dep't) *app. dismissed,* 12 N.Y.2d 668, 233 N.Y.S.2d 461, 185 N.E.2d 901 (1962) *aff'd,* 12 N.Y.2d 909, 237 N.Y.S.2d 1007, 188 N.E.2d 270 (1963).

F. Abuse of Process

Shoe World's sixth and final counterclaim against El Greco alleges abuse of process. There are three elements to a claim of abuse of process:

(1) regularly issued process, civil or criminal,

(2) an intent to do harm without excuse or justification, and

(3) use of the process in a perverted manner to obtain a collateral objective.

*Curiano v. Suozzi,* 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984). Shoe World alleges that El Greco wrongfully obtained a temporary restraining order by misleading this Court into believing that Shoe World was counterfeiting El Greco's shoes. Because of the temporary restraining order, Shoe World argues, it was wrongfully compelled to discontinue its sale of CANDIE'S shoes and suffered harm to its good will and reputation.

Although Shoe World has alleged the first two elements, it has failed to allege "[t]he gist of the action for abuse of process" which is "the improper use of process after it is issued." *Dean v. Kochendorfer,* 237 N.Y. 384, 390, 143 N.E. 229 (1924). It is not enough that El Greco acted with malicious intent in seeking or obtaining a TRO: "[a] malicious motive alone ... does not give rise to a cause of action for abuse of process." *Curiano, supra,* 63 N.Y.2d at 117, 480 N.Y.S.2d at 468, 469 N.E.2d at 1326. Nor is it sufficient that the TRO, which, while effective, forbade Shoe World from selling CANDIE'S shoes, was subsequently found to be unjustified. This was the very purpose for which the TRO was granted. Under New York law, an action for abuse of process lies only "[w]here process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution." *Board of Education v. Farmingdale Classroom Teachers Ass'n,* 38 N.Y. 397, 404, 380 N.Y.S.2d 635, 643, 343 N.E.2d 278, 283 (1975). The remedy for damages from a TRO wrongfully obtained but properly implemented lies elsewhere. *See* N.Y.C.P. L.R. 6315 (McKinney's 1980); *cf.* Fed.R. Civ.P. 65(c).

Shoe World argues that it has attributed to El Greco the "collateral objective" of "wrongfully causing false, defamatory, and derogatory statements to be made and to be published about Shoe World." Shoe World's Answer at ¶ 33. El Greco responds with some force that this argument is an impermissible attempt to assert a defamation claim otherwise found to be barred. Without reaching this question, it is clear that this allegation still does not set forth a cause of action for abuse of process. As one New York court has put it, "Embarrassment in business resulting to the parties being sued is not beyond the area of legitimate use of process...." *Reiner v. Kane,* 25 Misc.2d 477, 197 N.Y.

S.2d 330, 334 (Sup.Ct.1960). An action for abuse of process must include some element of extortion, an element lacking in Shoe World's complaint. *Compare Cardy v. Maxwell,* 9 Misc.2d 329, 169 N.Y.S.2d 547, 549–50 (Sup.Ct.1957) (claim for abuse of process upheld on allegations that "defendants inserted in the complaint ... allegations regarding plaintiff which, if published, would expose him to public ridicule and contempt," that "defendants ... threatened plaintiff with adverse newspaper publicity unless he paid several million dollars to them to withhold further action by them," and that "defendants caused the ... allegations of the complaint to be given extensive and lurid publicity when plaintiff refused to comply with their demands").

Finally, it has been held that "to sustain [an action for abuse of process] plaintiff must allege ... actual or special damages." *Board of Education, supra,* 38 N.Y.2d at 405, 380 N.Y.S.2d at 644, 343 N.E.2d at 284. As has already been explained, *see* p. 1045 *supra,* Shoe World's allegations in this regard are insufficient. Thus, this counterclaim must be dismissed as well.

*Conclusion*

For the reasons stated above, the Rule 11 motions of Shoe World and El Greco are denied; El Greco's motion for summary judgment is granted.