THE PROCTER & GAMBLE
COMPANY, Plaintiff,

v.

QUALITY KING DISTRIBUTORS, INC.,
Neal Rose, Omni Source International,
Inc., Allou Health & Beauty Care, Inc.,
Salvatore "Sal" Arzillo, Jr., Rapid Air &
Ocean, Inc., Southern Trading Interna-
tional, Inc., Beverly Zoeller, Erica Web-
er, Zoeller International Trading, Inc.,
Frank Pandullo, Derek Ma, Chris A.
Schneyderberg, Rainbow Soap Company,
Abe Gruda, Paul Doubilet, A. Gruda
Products Co., Ayesha Alam, Philip Kali-
fon, Ianco Envirotech Inc. and John
Does 1–10, Defendants.

OMNISOURCE INTERNATIONAL,
INC., Third–Party Plaintiff,

v.

RAPID AIR & OCEAN, INC. and
Southern Trading International,
Inc., Third–Party Defendants.

QUALITY KING DISTRIBUTORS, INC.,
and Omnisource International, Inc.,
Counterclaim Plaintiffs,

v.

THE PROCTER & GAMBLE
COMPANY, Counterclaim
Defendant,

and

Procter & Gamble, Inc., Additional
Defendant on Counterclaim.

No. CV 95–3113 (ADS).

United States District Court,
E.D. New York.

Sept. 3, 1997.

192

Kramer, Levin, Naftalis & Frankel, New York City (Harold P. Weinberger, of Counsel), for Plaintiff–Counterclaim Defendant The ·Procter & Gamble Company and Counterclaim Defendant Procter & Gamble, Inc.

Edwards & Angell, New York City (Alfred R. Paliani, Thomas E. Hone, of Counsel), for Defendant–Counterclaim Plaintiff Quality King Distributors, Inc.

Hopkins & Sutter, Chicago, IL (David B. Goroff, of Counsel), Co–Counsel for Defendant–Third–Party Plaintiff–Counterclaim Plaintiff Omnisource International, Inc.

Certilman Balin Adler & Hyman, LLP, East Meadow, NY (Thomas J. McNamara, of Counsel), Co–Counsel for Defendant–Third–Party Plaintiff–Counterclaim Plaintiff Omnisource International, Inc.

### MEMORANDUM DECISION
### AND ORDER

SPATT, District Judge.

This case involves the alleged misuse of the waste products of a shampoo called Head & Shoulders. The action arises from the claims of the plaintiff-counterclaim defendant, Procter & Gamble Company ("P & G"), against numerous parties, including Quality King Distributors, Inc. ("Quality King") and Omnisource International, Inc. ("Omni"), who it alleges were mixing, bottling, selling and distributing potentially harmful, counterfeit Head & Shoulders shampoo, in violation of the Lanham Trade–Mark Act, 15 U.S.C. § 1051, *et seq.* Presently before the Court is a motion by plaintiff-counterclaim defendant, P & G, and its Canadian affiliate, counterclaim defendant Procter & Gamble, Inc. ("P & G Canada", collectively, the "P & G companies"), to dismiss the counterclaims by defendants-counterclaim plaintiffs Quality King and Omni, pursuant to Fed.R.Civ.P. 12(b)(6) and 9(g).

## I. BACKGROUND

The Court has taken these facts from the counterclaims. P & G is a corporation organized and existing under the laws of the state of Ohio. Upon information and belief, P & G owns or controls P & G Canada, a corporation organized and existing under the laws of Ontario, Canada. P & G Canada owns and operates a manufacturing facility located in Hamilton, Ontario, Canada (the "Hamilton facility").

P & G Canada manufactured Head & Shoulders brand products at the Hamilton facility for distribution in Canada and the United States. At the Hamilton facility, P & G Canada would: (a) upon completion of a product run or termination of the production of certain P & G products, such as Head & Shoulders, dispose of the surplus product; (b) dispose of waste resulting from the periodic clean out of its production equipment; and (c) dispose of those products which did not meet its specifications or quality control criteria (collectively, the "waste products").

In or about early 1992, Ianco Envirotech, Inc. ("Ianco") offered to be the exclusive agent for disposal of P & G Canada's waste products. P & G Canada then appointed Ianco as its exclusive agent for the disposal of waste products from the Hamilton facility. Commencing in 1992, on approximately a monthly basis, P & G Canada delivered large volumes of waste products to Ianco. The shipments included hair shampoos, hair conditioners, detergents and other personal care products. P & G Canada allegedly saved approximately $300,000.00 that it would otherwise have spent on landfill costs by delivering its waste products to Ianco, free of charge.

Pursuant to the agreement between Ianco and P & G Canada, Ianco was to dispose of such surplus product and waste by mixing it with water, dye, salt, perfume and/or other ingredients before reselling it to retailers or consumers as a non-Procter & Gamble product. These were referred to as "bastard products."

P & G Canada did not impose upon Ianco any restrictions or requirements as to testing, storage location, storage duration, storage temperature, humidity, additives or ingredients, quality of bastard products, container size or shape of the bastard products, price of or profit from Ianco's sale of the bastard products, means of disposal or geographic location of disposal or resale or any other conditions. P & G Canada did, however, require that the bastard products not be identified as Procter & Gamble products.

Furthermore, upon information and belief, P & G Canada occasionally also delivered to Ianco waste products that were not in bulk but which were in individual or retail containers or bottles. Upon information and belief, if Ianco did not debottle those units and create bastard products, but instead sold them in the individual containers, P & G Canada would merely charge Ianco the wholesale price for that product. Ianco was not prohibited from reselling such products to consumers even though they were waste products.

In or about 1993, Ianco hired Ayesha Alam ("Alam"), a chemist, to assist Ianco in creating bastard products from the waste prod-

ucts P & G Canada delivered to Ianco. Upon information and belief, in late 1994 or early 1995, after leaving the employment of Ianco, Alam used waste products she had received from Ianco to manufacture bastard products that looked like Head & Shoulders hair shampoo. They were bottled in white containers shaped like the Head & Shoulders 15 oz. bottles.

Alam manufactured several thousand 15 oz. bottles of Head & Shoulders type products, and sold them to A. Gruda Products ("Gruda"), a company in the Toronto area. The 15 oz. bottles were then sold to an individual who called himself Frank Pandullo, whose real identity and residence remain a mystery. Apparently, the 15 oz. bottles were then labeled as Head & Shoulders and sold to Zoeller International Trading, Inc., which sold them to Rapid Air & Ocean, Inc. and Southern Trading International, Inc. in Florida, which in turn sold them to Omni, a Florida corporation. Omni sold these products to Quality King, which is a distributor of health and beauty aid products. Quality King is a New York corporation having its principal place of business in Suffolk County, N.Y. After receiving the counterfeit products from Omni, Quality King sold them to its wholesaler and retailer customers around the United States, including the Kroger Co., which operates approximately 1,200 supermarkets.

On August 3, 1995, P & G filed the complaint against Quality King. The complaint has since been amended twice to add numerous parties, including Omni, and to add other claims. In its Second Amended Complaint, P & G seeks, pursuant to the Trade-Mark Counterfeiting Act of 1984, 15 U.S.C. §§ 1116–17, the seizure of counterfeit Head & Shoulders, the equipment used to manufacture the counterfeit Head & Shoulders, and the records documenting the manufacture, sale, or receipt of the counterfeit Head & Shoulders, as well as treble damages, costs and attorney fees. P & G additionally sought injunctive and monetary relief for false descriptions and representations in commerce under Section 43 of the Lanham Trade–Mark Act, 15 U.S.C. § 1125, for trademark infringement in violation of Sec-

tions 32 and 43 of the Lanham Trade–Mark Act, 15 U.S.C. §§ 1114 and 1125, for injury to business reputation and dilution of mark in violation of N.Y. General Business Law § 368–d, for unfair competition in violation of New York common law and for contempt of court in connection with the violation of a prior court order.

In addition to the filing of the complaint: (1) P & G's Chief Executive Officer, John E. Pepper, sent a letter dated August 11, 1995 to retailers (the "Letter"); (2) P & G issued a press release dated August 11, 1995 (the "Press Release"); and (3) P & G distributed a nationwide advertisement (the "Advertisement"). The Advertisement warned the public of the potentially harmful counterfeit shampoo. In addition to warning the public, the Letter and the Press Release also stated that P & G had initiated an action against Quality King for selling counterfeit goods, as well as for trademark and package design infringement.

Two of the defendants, Omni and Quality King, filed counterclaims against the P & G companies. Quality King asserted the following four claims against P & G: (1) trade libel; (2) prima facie tort; (3) tortious interference with business relations; and (4) unfair competition. In addition, Quality King alleges the following three claims against the P & G companies: (1) breach of express warranty; (2) deceptive trade practices; and (3) contributory infringement. In its counterclaim, Omni reiterated three of those claims: (1) breach of express warranty; (2) deceptive trade practices; and (3) contributory infringement. The P & G companies now move to dismiss all counterclaims, pursuant to Fed.R.Civ.P. 12(b)(6) and 9(g).

## II. DISCUSSION

### A. *Fed.R.Civ.P. 12(b)(6) standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ". *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson,* 355 U.S. 41,

45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the counterclaim itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the allegations of the counterclaims as true, *see Leeds v. Meltz,* 85 F.3d 51 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the counterclaim plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Leeds, supra,* 85 F.3d at 51; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a counterclaim plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (citing *Scheuer, supra,* 416 U.S. at 235–36, 94 S.Ct. at 1686). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686).

Initially, the Court notes that the parties have submitted additional evidence including excerpts of deposition testimony which are outside the scope of the pleadings. Quality King requests that the Court convert the P & G companies' motion to dismiss into a motion for summary judgment. The Court may do so upon notice to all parties. *See* Fed.R.Civ.P. 12(c). However, since the Court has not given the parties advance notice of such conversion, the Court declines to convert this motion to dismiss into a motion for summary judgment. The Court will take into consideration any documents which were incorporated by reference upon which Quality King and Omni relies or which were integral to the counterclaims. *See International Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 72 (2d Cir.1995). Hence, the Court will only take into its consideration the Press Release, the Advertisement and the Letter. *See* Quality King Distributors, Inc.'s Answer to Second Amended Complaint, Counterclaims and Crossclaims ("Quality King's Counterclaim") ¶¶ 52, 56–57, 59; Omnisource International, Inc.'s Counterclaims ("Omni's Counterclaim") ¶¶ 27, 28. Pursuant to the above standard, the Court will not consider the Contact Detail Reports submitted by Quality King. The Court notes that it is not constrained to accept the allegations in the counterclaims with respect to the Press Release, the Advertisement and the Letter which are presently before the Court. *See id.* However, the Court will resolve any ambiguities in Quality King and Omni's favor. *See id.*

It is within this framework that the Court addresses the present motion to dismiss.

**B.** *Quality King's counterclaim of trade libel*

■ Quality King alleges that it was libeled by the statements contained in the

Letter, the Advertisement and the Press release concerning the lawsuit brought by P & G against Quality King for selling contaminated, counterfeit Head & Shoulders shampoo. As a threshold matter, the Court notes that the Advertisement does not contain any reference to Quality King or to any law suit. Therefore, Quality King's counterclaim of trade libel arising from the Advertisement fails to state a cause of action. *See Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 653 (2d Cir.1966) (plaintiffs must establish that any alleged defamatory statement is "of and concerning" them). With regard to the Letter and the Press Release, the Court finds that the statements made by P & G are privileged. Therefore, this counterclaim must be dismissed for failure to state a cause of action.

■ Section 74 of the New York Civil Rights Law provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceedings ..." N.Y. Civ. Rights L. § 74 (McKinney 1992). "Under New York law, statements that arise during the course of a judicial proceeding are absolutely immune from prosecution for defamation so long as they are reasonably related to that proceeding." *Lehman Bros. Commercial Corp. v. China Int'l United Petroleum Chemicals Co., Ltd.*, No. 94 Civ. 8304, 1995 WL 608313, at *5 (S.D.N.Y. Oct.16, 1995). "The test is whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth, if published.... If the published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding, then the privilege does not attach, as a matter of law." *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 630 N.Y.S.2d 18, 22 (1st Dep't 1995) (citations omitted). "[I]t is for the Court, in the first instance, to decide whether a publication is protected under section 74 as a fair report of [court] documents." *Karp v. Hill & Knowlton, Inc.*, 631 F.Supp. 360, 363 (S.D.N.Y.1986) (citations omitted).

The Court finds that the present case is analogous to the one presented in *El Greco Leather Prods., Co., Inc. v. Shoe World, Inc.*, 623 F.Supp. 1038 (E.D.N.Y.1985), *rev'd in part on other grounds*, 806 F.2d 392 (2d Cir.1986), *cert denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987). In *El Greco*, the holder of the CANDIES trademark brought a trademark infringement claim against the seller of counterfeit CANDIES shoes. One week after the filing of the complaint, an article appeared in a trade publication which contained "statements to the effect that ... [the retailer] was engaged in counterfeiting and other unfair trade practices." *Id.*, at 1041. In dismissing the counterclaims for defamation and trade libel, the court stated that, "[w]hen determining whether an article constitutes a 'fair and true' report, the language used therein should not be disected and analyzed with a lexicographer's precision." *El Greco*, 623 F.Supp. at 1043 (quoting *Holy Spirit Ass'n v. New York Times Co.*, 49 N.Y.2d 63, 68, 399 N.E.2d 1185, 1187, 424 N.Y.S.2d 165, 167 (1979)). The article need only be a "substantially accurate" rendering of the allegations of the complaint. *Id.*

■ In the present case, the Letter makes the following reference to Quality King:

> Your Procter & Gamble Account Executive will be working with the appropriate people in our organization to provide any assistance we can in dealing with this situation. In return, we need your assistance in identifying the sources of this counterfeit product in the event you should have any of it. Procter & Gamble has already filed suit against one known distributor of this production, Quality King, and will promptly take any additional legal action against those who have produced and distributed this counterfeit product.

In addition, the Press Release makes the following reference to Quality King:

> ... P & G has filed suit against Quality King, a major New York-based wholesale distributor of consumer goods, in U.S. District Court on Long Island. The suit charges Quality King with selling counterfeit goods as well as trademark and package design infringement. P & G is seeking compensatory and punitive damages.

Quality King maintains that the P & G companies can not assert the privilege since the Letter and the Press Release tell an incomplete story from which the reader will be misled and "do not leave the ordinary reader with the impression of reading a report of a judicial proceeding, much less a fair and true report of one, given that P & G is both the author and the plaintiff." Quality King Distributors, Inc.'s Memorandum in Opposition to the Motion of the Procter & Gamble Company and Procter & Gamble, Inc. to Dismiss Quality King's Counterclaims ("Quality King's Memo in Opp.") at 11. The Court finds this argument unavailing.

The Court finds that the above statements by P & G are "fair and true" reports of judicial proceedings. In the original complaint, P & G alleged, *inter alia*, that "Quality King's sale of counterfeit low-quality Head & Shoulders is irreparably harming Procter & Gamble's reputation and defrauding the purchasing public." Complaint ¶ 2. The statements in the Letter and the Press Release merely assert that P & G had instituted an action against Quality King for selling counterfeit products, as well as for trademark and package design infringement. The statements are thus a "substantially accurate" rendering of the allegations of the complaint. It is irrelevant that P & G, a party to the action, issued the statements, rather than the media. *See Lehman Bros. Commercial Corp.*, 1995 WL 608313, at *5 (statements made by parties are privileged so long as they constitute a "fair and true report" of the judicial proceeding). The other portions of the Letter and the Press Release "constitute[ ] background to the misconduct attributed to [Quality King] in the complaint ...," and thus do not remove [the Letter or the Press Release] from the protection of Section 74." *El Greco*, 623 F.Supp. at 1043 (citation omitted).

The cases cited by Quality King are clearly distinguishable from the present case. First, in *Keogh v. New York Herald Tribune, Inc.*, 51 Misc.2d 888, 891, 274 N.Y.S.2d 302, 306 (1st Dep't 1966), *aff'd*, 28 A.D.2d 1209, 285 N.Y.S.2d 262 (1967), the court held that the newspaper statements were not privileged under Section 74 since the articles did not narrate the testimony of witnesses in the

grand jury proceeding, nor report what transpired before the grand jury. Rather, the court held that the articles were "stories based on rumors and gossip." *Id.*, 51 Misc.2d at 892, 274 N.Y.S.2d 302. Second, in *Corporate Training Unlimited, Inc. v. National Broadcasting Co., Inc.*, 868 F.Supp. 501, 508–09 (E.D.N.Y.1994), the televised report broadcast was not protected by the Section 74 privilege since the "succession of interviews with participants in the incident" was not a report, much less a "fair and true report", of the judicial proceeding.

 The P & G companies also advance the argument that Quality King's counterclaim of trade libel must be dismissed for failure to plead special damages. Quality King labels its cause of action as "trade libel." The tort of trade libel is "the disparagement of a business' goods or services." *Van–Go Transport Co., Inc. v. New York City Bd. of Educ.*, 971 F.Supp. 90, 98 (E.D.N.Y.1997). It does not protect the reputation of the business. *Id.* Quality King alleges that the statements were "derogatory to Quality King's business, wrongfully interfered with Quality King's business relationships and directly caused Quality King to lose substantial business and profits." Quality King's Counterclaim ¶ 60. However, Quality King also alleges that the P & G companies "knowingly, wilfully and with malicious intent to harm Quality King's business and reputation" defamed Quality King. *Id.* ¶ 61. As such, the Court finds that this claim not only sounds in trade libel, but also in a claim for reputational injury to its business. *See Van–Go Transport Co.*, 971 F.Supp. at 98. Because statements impugning a business reputation is libel *per se*, special damages need not be pled. *See id.; Yesner v. Spinner*, 765 F.Supp. 48, 52 (E.D.N.Y.1991).

In conclusion, because the Letter and the Press Release are privileged, the Court grants the P & G companies' motion to dismiss Quality King's counterclaim of trade libel, pursuant to Fed.R.Civ.P. 12(b)(6).

C. *Quality King's counterclaims for prima facie tort. tortious interference with business relations and unfair competition*

Quality King's counterclaims of prima facie tort, tortious interference with business rela-

tions and unfair competition are premised upon the same statements contained in the Letter, the Press Release and the Advertisement. Because the Court has determined that these statements are privileged, these counterclaims also fail to state causes of action and their dismissals are mandated. *See National Nutritional Foods Ass'n v. Whelan,* 492 F.Supp. 374, 384 (S.D.N.Y.1980) ("[i]t would make no sense ... to deem certain expressions immune from suit as libel, and then find them sufficient in the identical factual context to constitute a prima facie tort ..."); *McNally v. Yarnall,* 764 F.Supp. 838, 853 (S.D.N.Y.1991) (dismissing a claim for tortious interference which was based on allegedly libelous statements since the court's holding on the defamation claim determined the tortious interference claim); *El Greco,* 623 F.Supp. at 1044 (dismissing an unfair competition claim which was "redundant" of the dismissed trade libel and defamation claims); *Prudent Publishing Co., Inc. v. Myron Mfg. Corp.,* 722 F.Supp. 17, 23 n. 1 (S.D.N.Y.1989) (statements taken directly from the complaint and preliminary injunction on consent which were privileged under N.Y. Civ. Rights Law § 74 cannot form the basis of an unfair competition claim).

■ In addition, Quality King's claim of prima facie tort fails for independent reasons. A claim of prima facie tort has four elements:

(1) intentional infliction of harm;

(2) causing special damages;

(3) without excuse or justification;

(4) by an act or series of acts that would otherwise be lawful.

*Twin Laboratories Inc. v. Weider Health & Fitness,* 900 F.2d 566, 571 (2d Cir.1990); *El Greco,* 623 F.Supp. at 1044–45 (citing *Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 469 N.E.2d 1324, 480 N.Y.S.2d 466 (1984)); *Kalika v. Stern,* 911 F.Supp. 594, 605 (E.D.N.Y. 1995); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 142, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985). To be liable under the theory of prima facie tort, a defendant's actions must be motivated solely by "disinterested malevolence." *Id.; Chen v. United States,* 854 F.2d 622, 627–28 (2d Cir.1988); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59

N.Y.2d 314, 451 N.E.2d 459, 468, 464 N.Y.S.2d 712, 721 (1983). A plaintiff "cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Laboratories,* 900 F.2d at 571. "[M]otives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a prima facie tort claim." *Id.* (quoting *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2d Cir.1985)).

■ In the present case, Quality King's counterclaim of prima facie tort must be dismissed for failure to plead that P & G acted solely with "disinterested malevolence." Quality King alleges that P & G was motivated by, inter alia, "business animus toward Quality King," *see* Quality King's Counterclaim ¶ 54, and by the P & G companies' self-interest "to deflect attention from ... [their] own wrongdoing," *see id.* ¶ 61. Assuming, as the Court must for purposes of this motion, that these allegations are true, it is clear that P & G did not have the "disinterested malevolence," devoid of its self-interest, that is necessary for Quality King to state a claim for prima facie tort.

■ In addition, the Court finds that Quality King's failure to plead special damages mandates dismissal of its counterclaim of prima facie tort. " 'Special damages must be alleged with sufficient particularity to identify actual losses and be related casually [sic] to the alleged tortious acts.' " *El Greco,* 623 F.Supp. at 1045 (quoting *Lincoln First Bank of Rochester v. Siegel,* 60 A.D.2d 270, 400 N.Y.S.2d 627, 633 (4th Dep't 1977)).

■ In the instant case, Quality King's counterclaim fails to adequately plead special damages. Quality King asserts that it was damaged in the amount of at least $25 million through the resulting loss of three important customers—Krogers, Genovese Drugs and Walmart. Quality King's Memo in Opp. at 16; Quality King's Counterclaim ¶ 73. However, "[w]hen loss of business is claimed, the persons who cease[ ] to be customers must be named *and* the losses itemized.... 'Round figures' or a general allegation of a dollar amount as special damages do not suffice." *Matherson v. Marchello,* 100

A.D.2d 233, 473 N.Y.S.2d 998, 1001 (2d Dep't 1984) (citations omitted) (emphasis added); *see also Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1088 (S.D.N.Y.1988); *El Greco*, 623 F.Supp. at 1045. Quality King failed to itemize its losses but rather approximates its damages in a round figure of approximately $25 million. The Court finds that this is insufficient as a matter of law. *See Bradley v. National R.R. Passenger Corp. ("Amtrak")*, 797 F.Supp. 286, 295 (S.D.N.Y.1992) (allegations of "damages in the amount of $50,000, together with punitive damages in the amount of $500,000" insufficient to plead special damages with articularity); *Azby Brokerage*, 681 F.Supp. at 1088 (allegation of lost commissions in the amount of "at least ten million dollars" insufficient to plead special damages with particularity); *El Greco*, 623 F.Supp. at 1045 (allegation of damages to its business, reputation and good will "in an amount not less than $42,000,000" insufficient to plead special damages with particularity). Therefore, the Court grants P & G's motion to dismiss Quality King's counterclaim of prima facie tort for failure to state a cause of action.

Furthermore, the Court finds that Quality King's claim for tortious interference with business relations fails for independent reasons. To establish a claim for tortious interference with business relations, a plaintiff must demonstrate that the defendant "interfered with business or economic relations between the plaintiff and a third party, either (1) with the *sole* purpose of harming the plaintiff, or (2) by dishonest, unfair or improper means." *H & R Indus., Inc. v. Kirshner*, 899 F.Supp. 995, 1009 (E.D.N.Y.1995) (emphasis in original) (quoting *Campo v. 1st Nationwide Bank*, 857 F.Supp. 264, 273 (E.D.N.Y.1994)); *see also PPX Enterprises, Inc., v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir. 1987). "If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *PPX Enterprises*, 818 F.2d at 269 (citations omitted).

Quality King alleges that P & G was motivated by, inter alia, "business animus toward Quality King," *see* Quality King's Counterclaim ¶ 54, and by the P & G companies' self-interest "to deflect attention from ... [their] own wrongdoing," *see id.* ¶ 61. Thus, Quality King acknowledges that P & G was not motivated by the sole intent to harm Quality King. Further, Quality King fails to allege any facts tending to show that the Press Release, the Letter or the Advertisement circulated by P & G constitutes criminal or fraudulent conduct. Therefore, the Court grants P & G's motion to dismiss Quality King's counterclaim of tortious interference with business relations for failure to state a cause of action.

D. *Quality King and Omni's claims of breach of express warranty*

The first counterclaim asserts that P & G breached their express warranties to Quality King and Omni in connection with the surplus Head & Shoulders product in that it was not advertised as warranted, and was otherwise unfit for its intended use as hair shampoo. However, the parties agree that P & G did not manufacture, bottle, label, distribute, sell, advertise or otherwise authorize the production of the counterfeit Head & Shoulders. *See* Quality King's Counterclaim ¶¶ 40, 43–45; Omni's Counterclaim ¶¶ 15, 18–20. Indeed, Quality King and Omni realize that "the sole requirement imposed by P & G Canada was that the bastard products were not to be identified as Procter & Gamble products." Quality King's Counterclaims ¶ 41; Omni's Counterclaims ¶ 16. Therefore, Quality King and Omni's reliance on *County of Chenango Indus. Dev. Agency v. Lockwood Greene Engineers, Inc.*, 114 A.D.2d 728, 494 N.Y.S.2d 832 (3d Dep't 1985), and *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 181 N.E.2d 399, 226 N.Y.S.2d 363 (1962), which held that privity is unnecessary to state a claim of breach of express warranty, is mistaken. Although both these cases held the manufacturer of the product liable, neither of these cases, nor any other authority of which the Court is aware, supports the proposition that a manufacturer may breach an express warranty it gives on a genuine product in connection with the sale by others

of non-genuine, counterfeit products that it did not authorize, distribute or produce. "Express warranty claims should be dismissed where they do not contain specific factual references to any oral or written warranties." *Mastrangelo v. Howmedica, Div. Of Pfizer Hosp. Product Group, Inc.,* 903 F.Supp. 439, 444 (E.D.N.Y.1995). No warranties were made by the P & G companies with regard to the counterfeit Head & Shoulders shampoo. Accordingly, the Court dismisses Quality King and Omni's counterclaims of breach of express warranty, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

E. *Quality King and Omni's counterclaim of contributory infringement*

■ The counterclaim of contributory infringement is based on the premise that the P & G companies owed Quality King and Omni a duty to protect the integrity of its trademark and its branded products, and to exercise such control as was necessary to assure that no product released as waste products would be introduced into the stream of commerce. Quality King cites *Inwood Laboratories, Inc., v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982), which held the manufacturer liable for contributory infringement where it continues to supply the product to one whom it knows or has reason to know is engaging in trademark infringement, and *David Berg and Co. v. Gatto Int'l Trading Co., Inc.,* 884 F.2d 306 (7th Cir.1989), which held that a manufacturer may be liable for contributory infringement even if it does not itself mislabel goods or deceive customers, in support of its counterclaim. However, neither of these cases involve a claim for contributory infringement against the owner of the trademark. No party has standing to assert a trademark infringement claim against the registrant based on an alleged infringement of the registrant's own trademark. *See Tap Publications, Inc. v. Chinese Yellow Pages (New York), Inc.,* 925 F.Supp. 212, 217 (S.D.N.Y. 1996); *Silverstar Enterprises, Inc. v. Aday,* 537 F.Supp. 236, 240–41 (S.D.N.Y.1982). "[A] trademark infringement action may only be brought under the [Lanham] Act by the registrant or by his legal representative, predecessor, successor, or assignee." *DEP Corp. v. Interstate Cigar Co., Inc.,* 622 F.2d 621, 623 (2d Cir.1980). Quality King nor Omni have absolutely no legal interest in the Head and Shoulders trademark. Therefore, the Court finds that Quality King and Omni may not assert a claim arising from the infringement of the Head & Shoulders trademark.

■ Further, Omni states that it mislabeled its contributory negligence claim as one for contributory infringement. The Court finds that Omni's counterclaim of contributory negligence must also be dismissed for failure to state a claim upon which relief can be granted. Contributory negligence is not a cause of action, it is "an affirmative defense to be pleaded by the party asserting the defense." 79 N.Y. Jur.2d § 87, at 426 (1989) (citing N.Y. C.P.L.R. § 1412); *see also* Fed.R.Civ.P. 8(c) (stating that contributory negligence is a an affirmative defense). However, in the instance that its claim of contributory negligence fails to state a cause of action, Omni requests leave to amend its Answer by adding an additional affirmative defense of estoppel. Since the "operative allegations in a complaint are the ones that assert facts, not the ones that define legal theory," *see Construction Technology v. Lockformer Co., Inc.,* 704 F.Supp. 1212, 1218 (S.D.N.Y.1989), the Court grants Omni's request to amend its Answer to assert estoppel as an affirmative defense, but Omni may not raise contributory infringement or contributory negligence as a counterclaim.

F. *Quality King and Omni's counterclaims for deceptive trade practices*

Quality King and Omni's counterclaim of deceptive trade practices alleges that the P & G companies repeatedly misled the public and engaged in unfair and deceptive trade practices in violation of N.Y. Gen. Bus. L. § 349 ("Section 349"), resulting in harm to the public at large as purchasers and users of Head & Shoulders products.

■ The elements of a claim for deceptive trade practices are as follows:

(1) that the act or practice was misleading or dishonest in a material respect; and

(2) that the plaintiff was injured.

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529, 532 (1995). Although Section 349 normally does not provide a right of action by one business competitor against another, *see H2O Swimwear, Ltd. v. Lomas,* 164 A.D.2d 804, 560 N.Y.S.2d 19 (1st Dep't 1990), the Second Circuit has held that "corporate competitors now have standing to bring a claim under [Section 349] . . . so long as some harm to the public is at issue." *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996) (quoting *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 786 F.Supp. 182, 215 (E.D.N.Y.), *vacated in part on other grounds,* 973 F.2d 1033 (2d Cir.1992)). "The gravamen of the [deceptive trade practices] complaint must be consumer injury or harm to the public interest." *Id.* at 264 (citation omitted). Hence, private contract disputes, unique to the parties, would not fall within the prohibitions of Section 349. *Oswego Laborers',* 85 N.Y.2d at 25, 647 N.E.2d at 744, 623 N.Y.S.2d at 532.

 "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Tinlee Enters., Inc. v. Aetna Casualty & Sur. Co.,* 834 F.Supp. 605, 608 (E.D.N.Y. 1993) (quoting *Genesco Entertainment, a Division of Lymutt Industries, Inc. v. Koch,* 593 F.Supp. 743, 751 (S.D.N.Y.1984)). However, in the present case, the Court finds that there is nothing to suggest that the public was in some way injured by the Letter, the Press Release and the Advertisement. Further, there is no dispute that P & G did not advertise the counterfeit products as its own. Thus, even if, as Quality King and Omni maintain, "P & G voluntarily released into the stream of commerce large volumes of Head & Shoulders waste product . . . which was unfit for use as shampoo, without adequate controls . . .", they have not made out a claim for deceptive trade practices. The P

& G companies never deceived the public; in fact, it is undisputed that P & G Canada required that the counterfeit or "bastard" products were not to be labeled as Proctor & Gamble products. Quality King's Counterclaim ¶ 41, Omni's Counterclaim ¶ 16. In addition, P & G did not manufacture, bottle, label, distribute, sell, advertise or otherwise authorize the production of the counterfeit Head & Shoulders. *See* Quality King's Counterclaim ¶¶ 40, 43–45; Omni's Counterclaim ¶¶ 15, 18–20. Rather, the Court finds that this is a private dispute. Therefore, the Court grants the P & G companies' motion to dismiss Quality King and Omni's counterclaim of deceptive trade practices for failure to state a claim for which relief can be granted.

### III. CONCLUSION

Having reviewed the parties' submissions and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiff-counterclaim defendant Proctor & Gamble Company and counterclaim defendant Proctor & Gamble, Inc.'s motion to dismiss all the counterclaims of defendants-counterclaim plaintiffs Quality King Distributors, Inc. and Omnisource International, Inc., is granted; it is further

**ORDERED,** that the defendant Omnisource International, Inc.'s request for leave to amend its answer to assert the affirmative defense of estoppel, is granted; and it is further

**ORDERED,** that the parties are to contact Magistrate Judge Viktor V. Pohorelsky to conclude discovery forthwith.

**SO ORDERED.**